## STATE OF CONNECTICUT *v.* WILLIE HARRIS (14466)

Dupont, C. J., and Landau and Heiman, Js.

Argued November 4—officially released December 24, 1996

*Donald Dakers*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Michael A. Pepper*, assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant, Willie Harris, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a)[1] and 53a-54a (a).[2] On appeal, the defendant claims that the trial court improperly (1) admitted prior misconduct evidence, and (2) admitted a mug shot of the defendant that a witness used in making an out-of-court identification. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On April 27, 1993, at approximately 9 p.m., Ticcy Brown was walking on the sidewalk in front of 75 County Street in New Haven when he was struck by two bullets, one in the head and one in the chest, causing his death. The shots were fired from the back of a vacant lot on the side of 75 County Street. Subsequent ballistic tests established that the bullets had been fired from two different weapons. At the time of the shooting, Brown was walking near 75 County Street with Ephraim Gilliard and Sam Hook. Gilliard and Hook were walking behind Brown when the shots were fired and did not see who fired the shots.

Approximately fifteen minutes before the shooting, Antonio West observed the defendant, Bobby Jones and Darryl McIntyre sitting in a burgundy Ford Mustang in a parking lot near the crime scene. When they exited the car, West saw Jones and McIntyre put on black masks and saw that the defendant was wearing a green hooded sweatshirt. West noted that Jones was taller

[1] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[2] General Statutes § 53a-54a (a) provides in pertinent part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

than the defendant and McIntyre. He observed the three men cross the street, walk through a parking lot, and proceed toward 75 County Street.

On the night of the shooting, Latisha Lewis, from a window that overlooked the rear of 75 County Street, observed three individuals near the back edge of 75 County Street. She noted that two of them were wearing black clothing, that the other wore a hooded sweatshirt, and that one individual was taller than the others. From her window, she observed two of the three individuals fire their weapons in the direction of County Street. The three individuals then fled the scene. Priscilla Harris, who heard the gunshots and looked out her window, observed two individuals running toward Goffe Street and the defendant, whom she positively identified, running toward Orchard Street.

On June 16, 1993, the police issued a warrant for the arrests of the defendant, Jones and McIntyre. On November 9, 1993, while searching a residence pursuant to a warrant, the police found the defendant hiding in the darkened kitchen and Jones underneath a bed.

I

The defendant first argues that the trial court improperly admitted evidence of prior misconduct. The trial court admitted evidence proffered by two state witnesses that the defendant, Jones and McIntyre engaged in the sale of narcotics. The state argued that the evidence was highly probative of the relationship among the three individuals. The defendant objected to the admission of this evidence, arguing that its probative value was outweighed by its prejudicial effect.

At trial, West testified that he had observed the defendant, Jones and McIntyre, on several occasions, selling narcotics at the corner of Dickerman and

Orchard Streets.[3] Immediately following this testimony, the trial court gave a limiting instruction pointing out to the jury that the defendant is charged with conspiracy to commit murder, "not with drug cocaine possession, sale of cocaine or anything of that nature." It also instructed the jury that the evidence was admitted because it "is the state's claim that these three people, the [defendant, Jones] and this McIntyre had a relationship with each other . . . tend[ing] to corroborate the fact that the three of them hung around together . . . ." The fact that they were selling drugs "is not to be used against them in deciding this case."[4]

Another witness, Jeffrey Covington, testified that he was actively engaged in the narcotics trade with the defendant, Jones and McIntyre and that the defendant controlled the operation. He testified that Jones supplied him with the drugs to sell and that each day he

[3] West testified as follows:

"Q. Now did you see the three of them together in the area of Dickerman Street and Orchard Street?

"A. Yes.

"Q. What were they doing in that area?

"A. Selling.

"Q. Selling what?

"A. Cocaine."

[4] The trial court gave the following limiting instruction: "Ladies and gentlemen, I want to point out to you that the charge against these defendants in this case, the charge you are considering is conspiracy to commit murder. They are not charged with drug cocaine possession, sale of cocaine or anything of that nature. This evidence was admitted because it is the state's claim that these three people, the [defendant, Jones] and this McIntyre had a relationship with each other and it is the state's claim that this evidence that you just heard tends to corroborate the fact that the three of them hung around together, but the fact that I have allowed the nature of the relationship in, that according to this witness anyway they were out in that area dealing cocaine, the fact that they were engaged then in an illegal activity, sale of drugs, that is not, the fact that it was illegal, that is not to be used against them in deciding this case. That illegality is to be disregarded by you in deciding this case. It is merely offered to support the state's claim that these three people, the [defendant, Jones] and McIntyre had a connection with each other."

returned the proceeds from the sale of the drugs to Jones. Finally, he testified that following Brown's murder he could not reach Jones for three days. The defendant objected to the admissibility of the testimony, and argued that its probative value was outweighed by its prejudicial effect. The state asserted that the evidence was highly probative of the relationship among the three conspirators and also highly probative of the conspirators' changed course of conduct subsequent to the murder. After ruling that the probative value of the evidence outweighed the prejudicial impact, the trial court overruled the objection.[5] The trial court then gave a limiting instruction as to the permissible use of Covington's testimony.[6] Finally, in the trial court's charge to the jury

[5] The trial court stated: "[T]here are some prejudicial aspects to it, but I am inclined to think the probative value outweighs the prejudice. I think that when the jury finds out that Covington was prepared to turn over money as part of an ongoing operation to one of these defendants, and all of a sudden he can't find him to give him the money, that I gather the state will claim Jones knew money would be coming, I think it was Jones, but for some reason can't be located. I think that is evidence the jury has a right to consider to determine whether in fact the [defendant and Jones] were hiding. I'm going to overrule the objection. I will give them a curative instruction once again that this case is not about, not a drug charge; they are not to consider the fact that because there is evidence that these defendants were engaged in illegal activity that makes it more likely that they were, or they would commit this crime with which it is charged. It is not offered for that purpose. It is offered solely to show the extent of the relationship between the two, the three alleged coconspirators, and then it is further offered to show, according to the state, a change in their daily pattern of activities and availability which occurred at about the time Mr. Brown was shot. The objection is overruled."

[6] The trial court gave the jury the following limiting instruction during the course of Covington's testimony: "Ladies and gentlemen, in connection with the evidence that you are hearing and may hear, you have already heard that this witness testified that [the defendant, Jones] and Mr. McIntyre were engaged with him in a drug selling operation. I think you already heard some evidence from another witness saying that the three of them used to be out on the corner of some intersection engaged in selling drugs, and I gave you then a cautionary instruction. I am reminding you again that [the defendant and Jones] are not on trial for being involved in the illegal activity of selling drugs, and the fact that you may hear evidence from witnesses indicating that they were engaged in that kind of an operation, you may hear evidence and I think he already said it that Mr. Harris was in charge

on the issue of prior misconduct evidence,[7] it reiterated the purposes for which the evidence could be used.

"As a general rule, evidence of a defendant's prior crimes or misconduct is not admissible. *State* v. *Crump-*

of it, things of that nature, that evidence is not offered to prove that because they were, based on the evidence anyway, engaged in an illegal activity, that makes it more likely that they committed the crimes with which they are charged here. That is not the purpose of that evidence and it is not to be considered by you for that purpose. That merely because they were engaged in an illegal activity that means they are more likely to be guilty of this charge. That is not the purpose of the offer. The purpose of the offer is to show that the three alleged coconspirators, [the defendant, Jones] and Mr. McIntyre, had a close relationship, a close, according to the evidence, business relationship that went further than just being friends on the street. That they were closely involved with each other. And then there will be further evidence perhaps from this witness which has a different purpose on the part of the state and I will get to that after you hear that evidence if it comes in. Go ahead. I just want to remind you and reiterate any evidence about drugs, drug selling activity, a drug selling organization, who was the leader of it, who were the members of it, is not to be considered by you as evidence tending to prove because they engaged in what is an illegal activity that they are more likely to be guilty of this charge against each of them."

[7] In its charge, the trial court stated: "During the course of the trial you heard evidence concerning the involvement of the [defendant, Jones] and the alleged third coconspirator, Mr. McIntyre, in a group that sold drugs. Now as I told you when some of this evidence came in, that type of evidence was offered for a very limited purpose. It was not offered to prove that since these [individuals] were in some type of a drug selling business that therefore that tends to prove that they committed the crime charged in this case. You should not use that evidence in that fashion. That evidence was offered by the state solely on a claim that the three alleged coconspirators were more than just people who were casually—who casually knew each other, but that they were closely related in what might be called a business activity and therefore that this evidence should be considered by you as tending to support the state's claim that they were likely to be coconspirators. You also heard testimony from . . . Covington that as part of the drug selling operation he would turn over money received on a daily basis to Mr. Jones, but after the time of the shooting of . . . Brown he was unable to locate Mr. Jones as he had before for some period of time. This evidence was offered by the state on a claim that it shows a change in the pattern of activity by Mr. Jones immediately following the shooting and therefore that tends to show that Mr. Jones was involved in some way with the shooting. That is the purpose for which that evidence was offered, and that is the only way you should consider it."

*ton*, 202 Conn. 224, 228, 520 A.2d 226 (1987); *State* v. *Geyer*, 194 Conn. 1, 5, 480 A.2d 489 (1984). We have, however, recognized exceptions to the general rule if the purpose for which the evidence is offered is to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. *State* v. *Mooney*, 218 Conn. 85, 126, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991); *State* v. *Brown*, 199 Conn. 47, 56, 505 A.2d 1225 (1986); *State* v. *Ibraimov*, 187 Conn. 348, 352, 446 A.2d 382 (1982). '[Prior misconduct] evidence may also be used to corroborate crucial prosecution testimony. *United States* v. *Everett*, 825 F.2d 658, 660 (2d Cir. 1987), cert. denied, 484 U.S. 1069, 108 S. Ct. 1035, 98 L. Ed. 2d 999 (1988) . . . .' *State* v. *Santiago*, 224 Conn. 325, 338, 618 A.2d 32 (1992); *State* v. *Duntz*, 223 Conn. 207, 240, 613 A.2d 224 (1992)." *State* v. *Cooper*, 227 Conn. 417, 424, 630 A.2d 1043 (1993).

Our analysis of whether evidence of prior misconduct is admissible is two-pronged. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. "Second, the probative value of such evidence must outweigh the prejudicial effect of the other crimes evidence." *State* v. *Figueroa*, 235 Conn. 145, 162, 665 A.2d 63 (1995); *State* v. *Braman*, 191 Conn. 670, 676, 469 A.2d 760 (1983). Applying the foregoing principles in our examination of the proffered evidence, we conclude that the trial court properly ruled that West's testimony was relevant and material to at least one of the exceptions that allow evidence of uncharged misconduct to be admitted. First, the court found that West's testimony that he saw the conspirators selling cocaine together corroborated the state's claim that they had a relationship with each other and, therefore, was relevant to the charge of conspiracy. Second, the trial court found that Covington's testimony that he was looking to turn over

money to Jones, who worked with the defendant, as part of an ongoing drug operation, and that suddenly he could not find him is relevant to corroborate other evidence that the defendant was in hiding.

In finding the challenged evidence to be relevant, the trial court carefully balanced the probative value of the challenged evidence against its prejudicial effect, ruled that the probative value outweighed its prejudicial effect, and admitted the proffered testimony. Relevant evidence of prior uncharged misconduct that is prejudicial in nature "is admissible if the trial court, in the exercise of its sound discretion, determines that its probative value, for one or more of the purposes for which it is admissible, outweighs its prejudicial impact on the accused." *State* v. *Ramsundar*, 204 Conn. 4, 15, 526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987).

We will uphold the trial court's ruling on the admission of uncharged misconduct evidence unless there is a manifest abuse of discretion. See *State* v. *Braman*, supra, 191 Conn. 676. It is unlikely that the evidence of the defendant's involvement with drugs could have shocked or influenced the jury to the extent that the defendant was deprived of a fair trial. See *State* v. *Artieri*, 206 Conn. 81, 88–89, 536 A.2d 567 (1988). Considering the purpose of the challenged evidence and the trial court's limiting instruction and its charge, we cannot conclude that the trial court abused its discretion in finding that the probative value of the evidence outweighed its prejudicial effect and in admitting prior uncharged misconduct by the defendant. See *State* v. *Brown*, supra, 199 Conn. 58. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the prior misconduct evidence.

## II

The defendant next claims that the trial court improperly permitted the state to introduce a mug shot of the

defendant that Gilliard used in making an out-of-court identification. The defendant argues that the testimony had no evidentiary value and cannot be justified as buttressing Gilliard's subsequent in-court identification. The state maintains that this particular evidentiary claim was not raised in the trial court and, thus, should not be reviewed on appeal. The state further maintains that, if this court decides to review this claim, the trial court properly exercised its discretion, and, even if the admission of the mug shot was improper, such impropriety was harmless.

At trial, three mug shots of the defendant were introduced through three separate witnesses. On appeal, the defendant objects only to the mug shot introduced through Gilliard.[8] Gilliard, unlike West and Harris, did not testify that he had observed the defendant or the other conspirators in the area of the crime scene that night. Rather, he testified that he had been asked by the police if he knew the conspirators and, when he said that he did, he was shown a mug shot of each of them, which he identified.

" 'A "mug shot" is admissible if it is relevant and material and if its probative value outweighs its prejudicial tendency.' " *State* v. *Peary*, 176 Conn. 170, 175, 405 A.2d 626 (1978), quoting *State* v. *Crowe*, 174 Conn. 129, 131, 384 A.2d 340 (1977). "The primary responsibility for conducting the prejudicial-probative balancing test rests with the trial court, and its conclusion will be disturbed only for a manifest abuse of discretion." *State* v. *Figueroa*, supra, 235 Conn. 162.

In the present case, the mug shot had limited probative value because it merely confirmed Gilliard's testi-

---

[8] The defendant concedes that two of the three witnesses, West and Harris, were identification witnesses, i.e., each testified to observing the defendant near the scene of the crime on the night of its occurrence. There is no claim that their in-court identifications of the defendant were tainted by any

mony that he knew the defendant. The trial court did not consider the prejudicial-probative balancing test in determining the admissibility of the mug shot. The trial court did, however, require the state to cover any objectionable material that mitigated the prejudicial effect of the mug shot. See *State* v. *Woods*, 171 Conn. 610, 612–13, 370 A.2d 1080 (1976). While we caution against the indiscriminate use of mug shots for identification; see generally annot., 30 A.L.R.3d 908 (1970); we find no manifest abuse of discretion here.

Furthermore, even if the defendant had met his burden of showing an improper exercise of the trial court's discretion in admitting the mug shot into evidence, we conclude that the defendant has nonetheless failed to sustain his burden of proving that such evidentiary impropriety was harmful. See *State* v. *Dolphin*, 178 Conn. 564, 572, 424 A.2d 266 (1979). "In general, the admissibility of evidence does not constitute a constitutional issue. *State* v. *Walker*, [215 Conn. 1, 5, 574 A.2d 188 (1990)]; *State* v. *Smith*, 198 Conn. 147, 156, 502 A.2d 874 (1985). When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error. . . . The defendant must show that it is more probable than not that the erroneous action of the court affected the result. . . . *State* v. *Sierra*, [213 Conn. 442, 436, 568 A.2d 448 (1990)]." (Internal quotation marks omitted.) *State* v. *Polanco*, 26 Conn. App. 33, 42, 597 A.2d 830 (1991).

The admission of the defendant's photograph identified by Gilliard was cumulative. Two other witnesses, West and Priscilla, identified two other photographs and both were properly admitted. We find it improbable that the result in this case would have been different

suggestiveness. See *State* v. *Findlay*, 198 Conn. 328, 335–40, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986).

had the state introduced only two photographs, rather than three. See *State* v. *Fiocchi,* 17 Conn. App. 326, 338–39, 553 A.2d 181, cert. denied, 210 Conn. 812, 556 A.2d 611 (1989).

The evidence of the defendant's guilt was very strong. The jury could reasonably have found that the three conspirators arrived in Jones' burgundy Ford Mustang at the area of the shooting about fifteen minutes prior to the murder. They parked the vehicle one block from the scene. Jones and McIntyre wore black clothing and masks and the defendant wore a green hooded sweatshirt. Two of the three men opened fire in the direction of County Street, and the victim was shot in the head and chest from gunfire coming from the back of 75 County Street. The three men then fled the scene. All this is contrary to the defendant's statement to the police that he was nowhere near the scene of the murder that night.

In light of the evidence presented at trial, the defendant has failed to sustain his burden and, thus, we conclude that the admission of the evidence was harmless.

The judgment is affirmed.

In this opinion the other judges concurred.