STATE OF CONNECTICUT *v.* FUNDADOR VEGA
(AC 16850)

Foti, Landau and Daly, Js.

---

Argued November 3, 1997—officially released March 17, 1998

*Richard T. Meehan, Jr.*, special public defender, for the appellant (defendant).

*C. Robert Satti, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Donald A. Browne*, former state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, Fundador Vega, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a).[1] The defendant claims that the trial court

___

[1] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided

improperly (1) failed to charge the jury on the lesser included offenses of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3),[2] manslaughter in the second degree in violation of § 53a-56 (a) (1),[3] and criminally negligent homicide in violation of General Statutes § 53a-58 (a),[4] (2) admitted into evidence hearsay statements of the victim, and (3) admitted evidence of prior acts of physical abuse by the defendant against the victim. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim and the defendant were married and had three children. The defendant also had a son, J, from a previous marriage, who lived with his mother, the defendant's ex-wife, Evelyn Pinto. On Wednesday, November 9, 1994, the victim and the three children left their apartment on North Avenue in Bridgeport and went to live with Pinto and J at their home on Sheridan Street. On that day, J saw a revolver by the console of the defendant's car. He had never before seen his father in possession of a gun. That evening, while the defendant and J were working together at the defendant's cleaning business, the defendant inquired whether J

---

nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[2] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[3] General Statutes § 53a-56 (a) provides in relevant part: "A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

[4] General Statutes § 53a-58 (a) provides: "A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person, except where the defendant caused such death by a motor vehicle."

had seen the victim and the children. J did not reveal their whereabouts.

On November 10, 1994, the defendant reported to the Bridgeport police that his wife and three children were missing and that his wife was having an affair with another man. That evening, Officer Kenneth Kubel was dispatched to the Sheridan Street apartment where he spoke to the victim. He observed a scratch and a bruise on her left cheek. The officer then returned to police headquarters where he spoke to the defendant. The defendant stated that he had visited the Sheridan Street apartment and that he and the victim had argued about the defendant's belief that she was cheating on him. The defendant reported that the victim tore his jacket and tore from his body a gold chain and watch.

On November 11, 1994, the defendant drove the victim and two of their children to the North Avenue apartment. En route, the defendant asked the victim if she would come back and live with him, and the victim refused. When the family arrived at the apartment, the victim began to pack the children's clothes. While the defendant, the victim, two of their children, and the defendant's stepdaughter were in a bedroom in the apartment, the defendant again asked the victim whether she would return to live with him. The victim again refused, whereupon the defendant retrieved the gun, returned to the bedroom and shot the victim four times.

Later that day, the defendant surrendered to the police in Brooklyn, New York. He admitted buying the murder weapon on the street for $150. He stated that he was in love with his wife but that he felt she was having affairs with other men. He claimed that he shot the victim when she told him she would no longer let him see their children. At trial, the defendant presented evidence that he suffered severe brain damage as a

result of an automobile accident and that this injury affected his self-control. This, combined with the fear of losing his children, precipitated the shooting.

I

The defendant first claims that the trial court improperly denied his request to charge the jury on the lesser included offenses of manslaughter in the first degree, manslaughter in the second degree and criminally negligent homicide. We note at the outset that manslaughter in the first and second degrees and criminally negligent homicide are lesser included offenses within the crime of murder. *State* v. *Edwards*, 214 Conn. 57, 63, 570 A.2d 193 (1990).

" 'There is no fundamental constitutional right to a jury instruction on every lesser included offense'; *State* v. *Whistnant*, 179 Conn. 576, 583, 427 A.2d 414 (1980); rather, the right to such an instruction is purely a matter of our common law. 'A defendant is entitled to an instruction on a lesser [included] offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser.' Id., 588." *State* v. *Tomasko*, 238 Conn. 253, 260, 681 A.2d 922 (1996).

As required by *Whistnant*, we first consider whether the defendant's request to charge constituted an appropriate instruction. "A proposed instruction on a lesser

included offense constitutes an appropriate instruction for purposes of the first prong of *Whistnant* if it complies with Practice Book § 854." (Internal quotation marks omitted.) *State* v. *Tomasko*, supra, 238 Conn. 261. At the time of the trial in this case, § 854 provided in relevant part that "[w]hen there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based and, the evidence to which the proposition would apply . . . ." "We have held that, in the context of a written request to charge on a lesser included offense, this requirement of § 854 [that the request state the supporting evidence] is met only if the proposed request contains such a complete statement of the essential facts as would have justified the court in charging in the form requested. . . . *State* v. *Hall*, 213 Conn. 579, 591, 569 A.2d 534 (1990)." (Internal quotation marks omitted.) *State* v. *Tomasko*, supra, 261–62.[5]

The defendant's written request to charge on the lesser included offenses was a mere recitation of the pertinent statutory sections.[6] The defendant simply

---

[5] Practice Book § 854 was amended, effective October 1, 1996, to require a statement of essential facts only if requested by the court.

[6] The defendant's request to charge stated the following: "The defendant requests that the court instruct the jury on the following lesser included offenses, in addition to the lesser included offense of manslaughter under Section 53a-55 (a) (2):

"(1) Manslaughter in the first degree, Connecticut General Statutes Section 53a-55 (a) (3): '(a) a person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person.'

"(2) Manslaughter in the second degree, Section 53a-56 (a) (1): '(a) A person is guilty of manslaughter in the second degree when: (1) he recklessly causes the death of another person . . . .'

"(3) Criminally negligent homicide, Connecticut General Statute Section 53a-58 (a): '(a) A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person . . . .' "

asked the court to instruct the jury that it could consider the lesser included offenses of manslaughter in the first and second degrees and criminally negligent homicide. The defendant did not include any citation of authority or enumerate those facts that he believed supported the requested charge. His failure to do so is fatal to his claim. See *State* v. *Ostroski*, 201 Conn. 534, 558–59, 518 A.2d 915 (1986); *State* v. *McIntosh*, 199 Conn. 155, 159, 506 A.2d 104 (1986). The request in this case, like the request in *State* v. *McIntosh*, supra, 161, "contains nothing more than a skeletal list of statutory subsections." "While this court does not favor unyielding adherence to rules of procedure where the interests of justice are thereby disserved . . . the ever increasing refinement of our law justifies cooperation of counsel in stating requests for jury instruction. The minor burden of cooperation imposed by [Practice Book § 854] is neither unreasonable nor novel." (Internal quotation marks omitted.) *State* v. *Tomasko*, supra, 238 Conn. 262.

The defendant argues that although the request to charge was not supported by a detailed statement of facts, it is nonetheless improper for a court to fail to charge on lesser included offenses when warranted by the evidence. The defendant contends that there was significant evidence before the trial court to support the requested charge. Specifically, the defendant contends that there was evidence at trial that he suffered brain damage as a result of a motor vehicle accident. He points out that his ability to form the specific intent necessary for the crime of murder was an issue in the case on the basis of this evidence. Accordingly, he argues that the court should have instructed the jury on the lesser included offenses for the same reasons it instructed the jury on the defenses of diminished capacity and extreme emotional disturbance. In this regard, we note again that "[t]here is no fundamental constitutional right to a jury instruction on every lesser included

offense suggested by the evidence . . . . It is therefore incumbent on the defendant to request such an instruction." *State* v. *Whistnant,* supra, 179 Conn. 583. Moreover, we are not persuaded that a trial court's awareness of the factual basis for a requested charge, even if proven, constitutes an acceptable alternative to a party's compliance with the rules of practice. See *State* v. *Ramirez,* 16 Conn. App. 284, 289, 547 A.2d 559, cert. denied, 209 Conn. 828, 552 A.2d 434 (1988). The defendant failed to make a proper request for an instruction on the lesser included offenses under the first prong of *Whistnant.* Accordingly, the trial court's refusal to charge was justified.

II

The defendant next claims that the trial court improperly admitted into evidence statements of the victim that either constituted hearsay or were irrelevant. We agree with the defendant, but conclude that the introduction of the victim's statements was harmless.

The facts relevant to this claim are as follows. Officer Kubel testified on direct examination by the state that when he was dispatched to the Sheridan Street apartment on the evening of November 10, 1994, he observed that the victim had a scratch and a bruise on her left cheek. When he later met with the defendant at police headquarters, he observed that the defendant's clothing was torn and noted that the defendant complained that the victim had ripped his gold chain and watch off of him.

On cross-examination, Kubel testified that the defendant was not under arrest on November 10 and that he did not place him under arrest or apply for an arrest warrant. At the conclusion of cross-examination, the state made an offer of proof that it would seek to elicit from Kubel on redirect examination the substance of his conversation with the victim. The state represented

that Kubel would testify that the victim told him that the bruise and scratch were sustained two days earlier. Kubel would also testify that infliction of this injury constituted a misdemeanor and that he could not make a warrantless arrest on a misdemeanor two days after the incident.

The defendant objected to the admission of the victim's statement to Kubel on the ground that it was inadmissible hearsay. The defendant argued that the statement constituted an accusation against him on which there could be no confrontation. The defendant also argued that even if Kubel did not identify the defendant as the source of the injury, the victim's statements still would be inadmissible because, in that case, the testimony regarding the injury would be irrelevant. The state argued that although the statement constituted hearsay, it was admissible to show Kubel's state of mind. The state also argued that it should be permitted to examine Kubel in the manner suggested because on cross-examination the defense raised the issue of why there was no arrest. The defendant argued that Kubel's state of mind was irrelevant. The trial court overruled the defendant's objection and the state asked the following question of Kubel: "On cross-examination [defense counsel] asked you a question whether you had made an arrest, and you responded no. Would you tell the members of the jury why there was no arrest made that night, please?" Kubel responded: "Yes, because [the victim] stated that the assault took place and the bruises she sustained on her cheek occurred two days prior, on the 8th, and that's a misdemeanor, and you can't make a warrantless misdemeanor arrest two days later."

"It is an elementary premise of evidentiary law that a statement made out-of-court that is offered to establish the truth of the facts contained in the statement is hearsay. . . . A statement that is offered to show its

effect upon the hearer, however, is not hearsay." (Citations omitted; internal quotation marks omitted.) *State* v. *Robinson*, 213 Conn. 243, 258–59, 567 A.2d 1173 (1989). According to the state, the substance of Kubel's conversation with the victim was offered to show the effect that the statement had on Kubel, namely, why he did not arrest the defendant for assault. Accordingly, the statement was not hearsay. It was, however, inadmissible. "Evidence is only admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case." Id., 259. Neither Kubel's state of mind nor his subsequent conduct was in issue in the case. The fact that Kubel did not arrest the defendant or apply for an arrest warrant does not tend to establish whether the defendant was guilty of murder. See id.

Although we find that the trial court improperly admitted this evidence, the question remains whether the admission was harmful. "When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error. . . . The defendant must show that it is more probable than not that the erroneous action of the court affected the result." (Citation omitted; internal quotation marks omitted.) *State* v. *Robinson*, supra, 213 Conn. 259.[7] The defendant makes no showing of how the admission of Kubel's statement affected the result in this case. Furthermore, the defendant "opened the door" to this subject on cross-examination when he asked Kubel whether he made an arrest of the defendant after the events of November 10, 1994. "[A] party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . The party who initiates discussion on the

[7] Although the trial transcript reveals that the defendant asserted that admission of the victim's statement violated his constitutional right to confront witnesses against him, he did not address this claim on appeal.

issue is said to have 'opened the door' to rebuttal by the opposing party." *State* v. *Graham*, 200 Conn. 9, 13, 509 A.2d 493 (1986); *State* v. *Crowley*, 22 Conn. App. 557, 562, 578 A.2d 157, cert. denied, 216 Conn. 816, 580 A.2d 62 (1990). The defendant has failed to meet his burden and we find that his second claim on appeal fails.

## III

In his final claim, the defendant asserts that the court improperly admitted evidence of prior acts of abuse inflicted by the defendant against the victim. The state offered the testimony of the defendant's son, J, on this issue. On cross-examination, J testified that although he knew his father was looking for the victim and the children, he did not tell him that they were staying at the Sheridan Street apartment. On redirect examination, the state asked J if he had a reason not to tell his father, and J responded that he did. Upon further questioning by the state, J testified that he had seen his father hit the victim "many times" and that was the reason he did not tell his father where the victim and the children were staying.[8]

---

[8] The state asked the following questions and elicited the following answers from the defendant's son:

"[Assistant State's Attorney]: Mr. Vega, Attorney Meehan, who is the lawyer that asked you questions besides myself, asked you on what's called cross-examination if you had called your father and told him that the children and [the victim] were at the house on either Thursday or Friday after they came on Wednesday. Do you remember him asking those questions?

"A. Excuse me?

"Q. Do you remember the lawyer asking you those questions? In other words, did you call your father on Thursday after Carmen had come to the house with the children? Do you remember that question and your answer was that you didn't?

"A. I didn't.

"Q. Okay. Was there a reason why you didn't tell your father—and the question is going to be a yes or no answer at this point—is there a reason why you didn't tell your father that Carmen and the children were at your house on the Thursday or Friday?

"A. I don't understand. What you saying?

"As a general rule, evidence of a defendant's prior crimes or misconduct is not admissible." (Internal quotation marks omitted.) *State* v. *Harris*, 43 Conn. App. 830, 835, 687 A.2d 544 (1996). "The rationale of [the rule preventing evidence of guilt of other crimes] is to guard against its use merely to show an evil disposition of an accused, and especially the predisposition to commit the crime with which he is now charged." (Internal quotation marks omitted.) *State* v. *Figueroa*, 235 Conn. 145, 161, 665 A.2d 63 (1995). "We have, however, recognized exceptions to the general rule if the purpose for which the evidence is offered is to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . . [Prior misconduct] evidence may also be used to corroborate crucial prosecution testimony." (Citations omitted; internal quotation marks omitted.) *State* v. *Harris*, supra, 836. "To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . .

"Q. Was—what I want to know is, did you have a reason why you didn't tell your father that Carmen, who was killed, and the children were at your house on Sheridan Street?

"A. Yes.

"Q. Okay. And was that reason because of your observations of the physical relationship—in other words, how Carmen Vega and your father, Fundador Vega, were?

"A. I don't—I didn't hear.

"Q. Do you understand? Okay. Let me ask you this way. Did you ever see your father hit Carmen Vega before—

"[Defense Counsel]: Objection. Leading, Your Honor—

"Q.—she moved to the house?

"The Court: Well, it's a yes or no answer. Overruled.

"[Assistant State's Attorney]: Did you ever see your father hit Carmen Vega before she came to the house?

"A. Yes.

"Q. And how many times did you see that happen?

"A. Seen it many times.

"Q. And did that affect you—in other words, was that any reason why you didn't [tell] your father where Carmen was?

"A. Yes."

First, the evidence must be relevant . . . to at least one of the . . . exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the . . . evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Cooper*, 227 Conn. 417, 425, 630 A.2d 1043 (1993).

Prior to the commencement of the state's redirect examination of J outside the presence of the jury, the state alerted the court to its intention to ask J why he did not tell the defendant that the victim and the three children were staying at the Sheridan Street apartment. The defendant objected, arguing that to the extent this question elicited evidence of the defendant's prior misconduct, it was irrelevant and highly prejudicial. The court noted, however, that, since the defendant was not contesting the fact that he shot and killed the victim, J's testimony regarding acts of prior misconduct by the defendant toward the victim would not prejudice the defendant on that issue. The court observed that the evidence might in fact support the defendant's defense of extreme emotional disturbance. The court then added: "And it could be just it's motive and it may show intent to kill. It may show predisposition. . . . I mean, after all, he is charged with murder here. And if it's alleged and conceded that he took a gun and fired three bullets into this woman and left her dying in a closet, I don't know why collateral issues can't be addressed to show the motivation, predisposition to do that." In overruling the defendant's objection, the court permitted the state to ask J the limited question of why he did not tell the defendant where the victim and children were staying, but prohibited the state from inquiring about specific acts of abuse by the defendant of which J was aware and about those acts that were remote in time.

The defendant contends that the purpose of the state's inquiry was to show J's state of mind, which

was not relevant to any of the exceptions for admission of prior acts of misconduct. He contends further that the admission prejudiced his defense of extreme emotional disturbance by portraying him as a wife abuser, and that this prejudice substantially outweighed the probative value of J's state of mind.

It appears that the trial court determined that J's testimony was relevant to at least one of the circumstances encompassed by the exceptions to the rule against admissibility of evidence of prior uncharged acts of misconduct, such as motive or intent. The problem here is that the evidence was not offered for that purpose. "The degree to which any evidence is material and relevant must be assessed in light of the fact or issue that it was intended to prove." *State* v. *Geyer*, 194 Conn. 1, 7, 480 A.2d 489 (1984). According to the state, the purpose of J's testimony was both to explain why J did not tell the defendant where the victim was and to demonstrate the defendant's state of mind at the time of the victim's death. While we question whether J's state of mind was relevant to any issue in the case, the defendant's state of mind was relevant. Although the defendant did not contest that he shot and killed the victim, he raised the defense of extreme emotional disturbance, to which issues of motive and intent are relevant.

When relevant evidence of other crimes is offered, "the trial court must still consider whether its prejudicial tendency outweighs its probative value before ruling upon its admissibility." (Internal quotation marks omitted.) *State* v. *Braman*, 191 Conn. 670, 676, 469 A.2d 760 (1983). Because of the difficulties inherent in this balancing process, we will uphold the trial court's ruling on the admission of uncharged misconduct evidence unless there is a manifest abuse of discretion or an injustice appears to have been done. Id.; *State* v. *Harris*, supra, 43 Conn. App. 837. The trial court limited the

scope of the state's inquiry, thereby lessening any potentially prejudicial impact of the evidence. We conclude that the trial court did not abuse its discretion in admitting J's testimony.

Assuming, arguendo, that J's testimony was improperly admitted, we find that its admission was harmless in light of other evidence of abusive conduct by the defendant. " 'It is a fundamental rule of appellate review of evidentiary rulings that if error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him.' " *Higgins* v. *Karp*, 243 Conn. 495, 506, 706 A.2d 1 (1998). "The question is whether the claimed erroneous action of the trial court is likely to have affected the result of the trial." *State* v. *Marshall*, 45 Conn. App. 66, 78, 694 A.2d 816, cert. granted on other grounds, 241 Conn. 925, 697 A.2d 361 (1997). " 'One factor to be considered in determining whether an improper ruling on evidence is a harmless error is 'whether the testimony was cumulative' . . . ." *State* v. *Wearing*, 46 Conn. App. 741, 756, 701 A.2d 41, cert. denied, 243 Conn. 937, 702 A.2d 645 (1997), quoting *State* v. *Milner*, 206 Conn. 512, 529, 539 A.2d 80 (1988).

James Merikangas, a medical expert who testified to the defendant's brain damage and offered his opinion regarding whether the circumstances surrounding the shooting affected the defendant's capacity for self-control, testified on cross-examination to his knowledge of prior assaultive conduct by the defendant against both the victim and the defendant's ex-wife. Thus, J's testimony that he saw the defendant hit the victim at times in the past was merely cumulative of other validly admitted, unobjected to evidence. See *State* v. *Gonzales*, 186 Conn. 426, 430 n.2, 441 A.2d 852 (1982) (admission of hearsay evidence, although potentially prejudicial, not harmful because cumulative of that previously and properly given). Accordingly, we reject the

defendant's claim that the trial court's admission of J's testimony was harmful.

The judgment is affirmed.

In this opinion the other judges concurred.