STATE OF CONNECTICUT *v.* GEORGE MCPHEE
(AC 18657)

Spear, Hennessy and Mihalakos, Js.

Argued January 21—officially released July 4, 2000

*J. Stacey Yarbrough* and *Jeffrey LaPierre,* certified legal interns, with whom was *Pamela S. Nagy,* assistant public defender, for the appellant (defendant).

*Robert M. Spector,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Edward R. Narus,* senior assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, George McPhee, appeals from the judgments of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), two counts of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1), and three counts of risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21. On appeal, the defendant claims that the trial court improperly (1) allowed one of the victims to hold a large, stuffed toy animal while testifying, (2) admitted into evidence testimony about certain acts of uncharged misconduct, (3) excluded

from evidence a physician's handwritten notes that allegedly were taken for the purpose or in furtherance of treatment or diagnosis and (4) failed to instruct the jury on the offense of cruelty to persons. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. Between 1993 and 1995, the defendant lived in Bristol with his wife and their child, S, and his wife's three children from a previous marriage, M, C and D. During this time, the defendant subjected M and C to sexual contact by playing what was called "the ice game." The ice game was played one or more times each month, and began when M was seven years old and continued until she was nine years old. The defendant would ask one of the children to retrieve a tray of ice from the freezer, and then would take a piece of ice and put it in their underwear. The defendant would rub the ice around M's vagina and then place it inside her vagina until the ice melted. After the ice melted, the defendant would place his finger inside her vagina. The defendant also would place a piece of ice in C's underwear and rub it around his penis until the ice melted, at which time he would fondle C while pretending to be trying to find the ice.

The defendant played the ice game with all four children while their mother was in the same room or an adjacent room. M and C did not like the ice game and hated the defendant. The defendant also would hug and kiss M good night and touch his tongue to her lips when he did so.

The children did not complain to anyone about the ice game during the three years that the defendant subjected them to it because they were afraid of reprisal. M mentioned the behavior to a cousin who in turn told her mother, M's aunt. The aunt spoke privately with M about the ice game and subsequently reported the

conduct to the department of children and families (department). Other facts will be discussed where relevant to the issues in this appeal.

## I

The defendant claims first that he was deprived of a fair trial because M was allowed to testify while holding a large stuffed toy gorilla. He claims that the court's failure to remove the stuffed animal deprived him of his constitutional rights to confrontation and to a fair trial in violation of the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the constitution of Connecticut.

The following additional facts are necessary to our resolution of this issue. Prior to M's testimony, defense counsel observed that she had brought a large stuffed animal to court. The defendant objected to the idea of allowing her to testify while holding the stuffed animal because it might elicit sympathy from the jury and it made viewing the witness difficult. The court overruled the objection, and M was allowed to hold the stuffed animal during her testimony.[1] M, who was twelve years old at the time of trial, testified that she purchased the stuffed animal with her money and that it was her idea to bring it to court to help her testify.

The defendant raises two issues regarding the court's ruling allowing the witness to hold the stuffed animal. First, the defendant raises a confrontation issue as it relates to his claimed inability to see the witness during her testimony because the stuffed animal blocked his

[1] The court ruled on the defendant's objection, stating: "All right. Under the circumstances, I'm going to overrule the objection. I just don't see the problem with it. It makes her more comfortable; it makes her more at ease; and being a courtroom setting, I think it's, generally speaking, very difficult for a child to be in a setting like this, and anything that would make her more comfortable and more at ease I think is appropriate. So, for those reasons, I'm going to deny your request."

view. Second, the defendant claims that he was prejudiced by the court's allowing M to hold the stuffed animal while testifying. We will address each issue in turn.

## A

The defendant claims that because the court allowed M to hold the stuffed animal during her testimony, his right to confrontation guaranteed by the federal and state constitutions; U.S. Const., amends. VI, XIV; Conn. Const., art. I, § 8; was abrogated in that his view of the witness was obstructed.

This claim is without merit. The record reveals that the court addressed the defendant's concern and adequately accommodated him.[2]

---

[2] The following colloquy took place before M was allowed to testify:

"[Defense Counsel]: May I ask, Your Honor, I note [that] as [M] has been holding [the stuffed animal], it's very close to her face and part of her face is covered by it. May I ask that the court instruct her to perhaps keep the animal down on her lap and hold onto it that way so that the jury can see her face and we can see her face?

"The Court: Well, I think part of the comfort in this, having the animal, is that she can touch it and feel it near her. I just don't see the need—the record should reflect [that] the jury would be to the child's left and be able to see the entire face.

"[Defense Counsel]: Right. But my client—

"The Court: I don't see the problem.

"[Defense Counsel]:—who obviously has a right to confront, and part of that right is to observe an accuser, is going to have difficulty observing her.

"The Court: The record should reflect also that the—your client is a rather large individual and should be able to see pretty clearly from where he is. I don't see that his visibility would be hampered to any great degree. If he still can't see, he can move over farther.

"[The Defendant]: I can't see. All I can see is her eyebrows.

"The Court: All right. You can move over to the left.

"[Defense Counsel]: You can't—really, Your Honor, I'm right here at my client's head level and I see [M's] eyes.

"The Court: Well, what I'm suggesting is that he move over. Just move his chair. Does that chair roll?

"[Defense Counsel]: Should he sit in the pew, Your Honor, or—

"The Court: Or he can sit in the back there if he'd like.

"[Defense Counsel]: That would be probably the best. Thank you. And then I'll just [move] over myself. Thank you, Your Honor.

B

The defendant next claims that he was deprived of a fair trial because M was allowed to hold the stuffed animal while testifying. The defendant asks us to apply the standard set out in *State* v. *Jarzbek*, 204 Conn. 683, 704–705, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988), in which our Supreme Court held that in criminal prosecutions involving alleged sexual abuse of children of tender years, "a trial court must determine, at an evidentiary hearing, whether the state has demonstrated a compelling need for excluding the defendant from the witness room during the videotaping of a minor victim's testimony." Id., 704.[3] The defendant also points to *State* v. *Menzies*, 26 Conn. App. 674, 690–91, 603 A.2d 419, cert. denied, 221 Conn. 924, 608 A.2d 690 (1992), in which a hearing was held on the state's motion, filed pursuant to General Statutes § 54-86g (b),[4] to place a guardian

---

"The Court: Okay. All right."

After M was called to the witness stand and before any direct examination of her was conducted, the following colloquy occurred:

"The Court: I'm going to ask that the defendant be put in a position where he can observe the proceedings also.

"[Defense Counsel]: Thank you, Your Honor. Thank you."

Later, after M began testifying and after a change of courtrooms, the court again inquired if the defendant was able to see the witness before her testimony resumed:

"The Court: Now, in this courtroom generally you can see—

"[Defense Counsel]: The same thing. I can now see her eyebrows and the top of her head.

"The Court: All right. Well, then we'll do the same thing. Why don't we do that now, then? Why don't you move to an area where you can see?

"[Defense Counsel]: Okay."

[3] The defendant also cites *State* v. *Menzies*, 26 Conn. App. 674, 690–91, 603 A.2d 419, cert. denied, 221 Conn. 924, 608 A.2d 690 (1992), for the proposition that the state should be required to prove by clear and convincing evidence a compelling need before allowing any of the special procedures allowed under General Statutes § 54-86g (b).

[4] General Statutes § 54-86g (b) provides: "In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger, the court may, upon motion of the attorney for any party, order that the following procedures be used when the testimony of the child

ad litem by the alleged victim's side during her testimony. The defendant claims, on the basis of the rationales of *Jarzbek* and *Menzies*, that the state should have been required to prove by clear and convincing evidence a compelling need to allow M to hold the stuffed animal while testifying. We disagree.

The defendant's reliance on *Jarzbek* and *Menzies* is misplaced. We first note that the situation in the present case is not, as was the case in *Menzies*, one specifically enumerated under § 54-86g (b). Therefore, the requirement that the state "prove, by clear and convincing evidence, a compelling need to have [the special procedure]"; *State* v. *Menzies*, supra, 26 Conn. App. 690–91; does not apply to this case. Furthermore, the situation in *Jarzbek* is far from analogous to the present case. In *Jarzbek*, the defendant was excluded from the witness room during the videotaping of the minor victim's testimony. *State* v. *Jarzbek*, supra, 204 Conn. 684. Our Supreme Court held that this departure from strict compliance with confrontation requirements was appropriate only where a case-by-case analysis is performed to "balance the individual defendant's right of confrontation against the interest of the state in obtaining reliable testimony from the particular minor victim in question." Id., 704. In *Jarzbek*, the claimed harm was that the special procedure denied the defendant his right to confrontation. Id., 689. In the present case, however, the defendant claims that he was harmed

is taken: (1) Persons shall be prohibited from entering and leaving the courtroom during the child's testimony; (2) an adult who is known to the child and with whom the child feels comfortable shall be permitted to sit in close proximity to the child during the child's testimony, provided such person shall not obscure the child from the view of the defendant or the trier of fact; (3) the use of anatomically correct dolls by the child shall be permitted; and (4) the attorneys for the defendant and for the state shall question the child while seated at a table positioned in front of the child, shall remain seated while posing objections and shall ask questions and pose objections in a manner which is not intimidating to the child."

because the jury's sympathy was aroused. We see no reason to extend the rationale of *Jarzbek* to this case. The only similarity between the two situations is that the special accommodations were made so that the child witnesses could be more comfortable, thus allowing them to testify more reliably.

Our Supreme Court recently decided *State* v. *Aponte*, 249 Conn. 735, 738 A.2d 117 (1999), in which a similar situation arose in the context of prosecutorial misconduct. In *Aponte,* the victim, a child, was allowed to testify while holding a Barney doll[5] given to her by the state's attorney. The court held that this was improper because the conduct of giving the doll to the victim might impact her suggestibility. Id., 745. It also is noteworthy that the court commented on the victim's possession of the doll, stating that "had the victim simply brought a favorite object from home, there would have been no basis for objection." Id. For these reasons, we conclude that the court did not abuse its discretion and did not violate the defendant's confrontation rights when it allowed the witness to hold the stuffed animal during her testimony.

## II

The defendant next claims that the court improperly admitted into evidence testimony about the defendant's prior acts of hitting the children with a belt. The defendant claims that (1) the act of striking the children was not uncharged misconduct because it is lawful to discipline children in this manner, (2) if it was uncharged misconduct, the state failed to prove that the evidence fell within one of the recognized exceptions for the admission of uncharged misconduct and (3) the evidence was more prejudicial than probative. We disagree.

---

[5] Barney is the name of a purple dinosaur on an educational children's television program. *State* v. *Aponte*, supra, 249 Conn. 737 n.4.

The following additional facts are necessary to our resolution of this issue. Before trial, the state provided notice of its intent to offer evidence of uncharged misconduct.[6] Defense counsel objected and sought to have the evidence excluded under the general rule prohibiting prior misconduct evidence. The court heard testimony outside the presence of the jury and then ruled that it would allow the state to present evidence that the defendant had hit the children on their buttocks with a belt because it was related to their fear of retribution if they resisted or complained.

The court heard testimony from M that she did not like to play the ice game, but did so because she feared the defendant would hit her with his belt. M testified that D was hit with a belt because he had refused to play the ice game. C testified about the use of a belt as punishment and testified that he participated in the ice game because he feared he would be hit with a belt. C also corroborated M's testimony regarding the incident in which D was hit with a belt for refusing to play the ice game. M and C testified that they did not tell the police the truth when they were first interviewed for fear of being hit with a belt. The court also allowed

---

[6] The "Notice of Uncharged Misconduct Evidence" disclosed that the state sought to offer evidence of the following acts:

"1) That the defendant placed liquid soap in the mouths of the male and female victims as a form of punishment;

"2) That the defendant would strike male and female victims on the buttocks with a belt/strap as a form of punishment;

"3) That the defendant would compel the male and female victims to stand in a corner as a form of punishment;

"4) That the defendant would compel the male and female victims and their stepbrother to wait on a back porch upon arriving home from school until such time as the defendant or the children's mother came home, in particular, during times of inclement or cold weather;

"5) That the defendant had the male victim and his stepbrother place ice in the female victim's pants; and

"6) That the defendant would slap, hit or push [the children's mother] at times, including during arguments with her."

the state to present evidence about the defendant's hitting the children through the testimony of M and C's aunt[7] and Officer Jerome Davis of the Bristol police department.

"As a general rule, evidence of a defendant's prior crimes or misconduct is not admissible." (Internal quotation marks omitted.) *State* v. *Harris*, 43 Conn. App. 830, 835, 687 A.2d 544 (1996). "The rationale of [the rule preventing evidence of guilt of other crimes] is to guard against its use merely to show an evil disposition of an accused, and especially the predisposition to commit the crime with which he is now charged." (Internal quotation marks omitted.) *State* v. *Vega*, 48 Conn. App. 178, 189, 709 A.2d 28 (1998). "We have, however, recognized exceptions to the general rule if the purpose for which the evidence is offered is to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . . [Prior misconduct] evidence may also be used to corroborate crucial prosecution testimony." (Citations omitted; internal quotation marks omitted.) *State* v. *Harris*, supra, 836.

"Our analysis of whether evidence of prior misconduct is admissible is two-pronged. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crimes evidence. *State* v. *Figueroa*, 235 Conn. 145, 162, 665 A.2d 63 (1995); *State* v. *Braman*, 191 Conn. 670, 676, 469 A.2d 760 (1983)." (Internal quotation marks omitted.) *State* v. *Harris*, supra, 43 Conn. App. 836.

[7] The testimony offered through the aunt was that she had seen the defendant hit the children so hard that they would be lifted off the ground. The defendant objected because the hitting described was with his hand, not a belt. The court ruled that the evidence was relevant to show that M and C were afraid of the defendant.

"When relevant evidence of other crimes is offered, the trial court must still consider whether its prejudicial tendency outweighs its probative value before ruling upon its admissibility. . . . Because of the difficulties inherent in this balancing process, we will uphold the trial court's ruling on the admission of uncharged misconduct evidence unless there is a manifest abuse of discretion or an injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *State* v. *Vega*, supra, 48 Conn. App. 191.

Here, the court allowed the introduction of evidence regarding the defendant's striking the male and female victims on the buttocks with a belt or strap.[8] The exclusion of evidence of the defendant's other acts of uncharged misconduct reveals that the court carefully considered and weighed the prejudicial tendency against the probative value before ruling on the admissibility of evidence that the defendant used a belt to discipline the children.[9]

We conclude that the court properly ruled that the testimony was relevant to the exception allowing evidence of an element of the crime, in this case, creating the fear of retribution for not participating in the ice game. Because the defendant was charged with the crime of sexual assault in the third degree in violation of § 53a-72a (a) (1), the state was required to prove that he compelled the victims by force or threat of force to submit to sexual contact. Under the circumstances, we

---

[8] In its ruling from the bench, the court stated in relevant part: "With respect to item number two, that the defendant would strike male and female victims on the buttocks with a belt or strap as a form of punishment, I'm going to allow testimony in that connection because I think that is directly related to the victim's alleged fear of retribution in the event she either resisted or complained about the conduct by the defendant. And I think the relevance outweighs any prejudice that might accrue to the defendant in that regard. So, that one will be allowed. That's number two."

[9] The court, however, did allow the introduction of evidence that the defendant had C and his stepbrother place ice in M's pants.

cannot conclude that the court abused its discretion by admitting the challenged evidence.

### III

The defendant next claims that the court improperly excluded from evidence handwritten notes by the victims' physician concerning an ongoing custody battle between the victims' biological father and their mother. The defendant claims that this evidence was admissible under the business record exception to the hearsay rule; General Statutes § 52-180;[10] and that the refusal to allow its admission was harmful error and a denial of his right to present a defense. Conn. Const., art. I, § 8; U.S. Const., amend. XIV. The defendant claims that this evidence was relevant to show that the victims lacked credibility.

The following additional facts are necessary to address this claim. During the testimony of a defense witness, Hertzler Knox, a physician, the defendant sought to introduce certain of Knox's medical records that contained notes he made while conducting physical examinations of the victims. The state objected on hearsay and relevance grounds. The defendant made an offer of proof and argued that the records were admissible under the medical records hearsay exception as statements made for the purpose of treatment and diagnosis. The court sustained the state's objection.

" 'On appeal, the trial court's rulings on the admissibility of evidence are accorded great deference. . . . Rulings on such matters will be disturbed only upon

---

[10] General Statutes § 52-180 (a) provides: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter."

a showing of clear abuse of discretion.'" (Citations omitted.) *State* v. *Jurgensen*, 42 Conn. App. 751, 754, 681 A.2d 981, cert. denied, 239 Conn. 931, 683 A.2d 398 (1996). Although the defendant claims that the medical records should have been admitted as an exception to the hearsay rule, he failed to argue to the trial court the relevance of the information he sought to introduce. The court indicated that the requested information was not relevant and denied the request on that ground.

"The proffering party bears the burden of establishing the relevance of the offered testimony. Unless a proper foundation is established, the evidence is irrelevant. *State* v. *Barnes*, [232 Conn. 740, 747, 657 A.2d 611 (1995)]; *Williams Ford, Inc.* v. *Hartford Courant Co.*, [232 Conn. 559, 571, 657 A.2d 212 (1995)]; *Hall* v. *Burns*, 213 Conn. 446, 452, 569 A.2d 10 (1990). Relevance may be established in one of three ways. First, the proffering party can make an offer of proof. . . . Second, the record can itself be adequate to establish the relevance of the proffered testimony. . . . Third, the proffering party can establish a proper foundation for the testimony by stating a good faith belief that there is an adequate factual basis for his or her inquiry." (Citations omitted; internal quotation marks omitted.) *State* v. *Beliveau*, 237 Conn. 576, 586, 678 A.2d 924 (1996). The defendant has failed to persuade us that he established at trial, through any of these methods, the relevance of the proposed evidence.

Our review of the record reveals that the defendant sought to introduce the evidence by claiming that it was allowed as an exception to the hearsay rule for statements made for the purpose of treatment and diagnosis. The defendant failed to explain at trial, however, why the information was relevant in the first place. Because the defendant's offer of proof was not sufficient to establish the relevance of the proffered evi-

dence, we conclude that the court did not abuse its discretion by precluding its admission.

## IV

The defendant's final claim is that the court improperly denied his written request to instruct the jury on the offense of cruelty to persons; General Statutes § 53-20;[11] because, as the charges were alleged in the informations, the defendant could not have committed sexual assault in the first degree, sexual assault in the third degree or risk of injury to a child without first committing the offense of cruelty to persons. We do not agree.

"There is no fundamental constitutional right to a jury instruction on every lesser included offense; *State v. Whistnant,* 179 Conn. 576, 583, 427 A.2d 414 (1980); rather, the right to such an instruction is purely a matter of our common law. A defendant is entitled to an instruction on a lesser [included] offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently

---

[11] General Statutes § 53-20 provides: "Any person who tortures, torments, cruelly or unlawfully punishes or wilfully or negligently deprives any person of necessary food, clothing, shelter or proper physical care; and any person who, having the control and custody of any child under the age of sixteen years, in any capacity whatsoever, maltreats, tortures, overworks, cruelly or unlawfully punishes or wilfully or negligently deprives such child of necessary food, clothing, or shelter shall be fined not more than five hundred dollars or imprisoned not more than one year or both."

to find the defendant innocent of the greater offense but guilty of the lesser. Id., 588." (Internal quotation marks omitted.) *State* v. *Tomasko*, 238 Conn. 253, 260, 681 A.2d 922 (1996).

"In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant,* supra, 179 Conn. 588, we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. *State* v. *Montanez,* 219 Conn. 16, 22–23, 592 A.2d 149 (1991); *State* v. *Herring,* 210 Conn. 78, 106, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989)." *State* v. *Tomasko,* supra, 238 Conn. 260–61. "On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if we cannot as a matter of law exclude [the] possibility that the defendant is guilty only of the lesser offense." (Internal quotation marks omitted.) Id., 261.

Under the first prong of *Whistnant,* we must determine if the defendant's request to charge was an appropriate instruction. "A proposed instruction on a lesser included offense constitutes an appropriate instruction for purposes of the first prong of *Whistnant* if it complies with Practice Book § 854 [now § 42-18]. *State* v. *Hall,* 213 Conn. 579, 591, 569 A.2d 534 (1990); *State* v. *Ostroski,* [201 Conn. 534, 556–58, 518 A.2d 915 (1986)]; *State* v. *McIntosh,* [199 Conn. 155, 158–61, 506 A.2d 104 (1986)]." *State* v. *Tomasko,* supra, 238 Conn. 261. Practice Book § 42-18 (a) provides in relevant part: "When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the evidence to which the proposition would apply. . . ." The defendant, in his request to charge, failed to meet the requirements of Practice Book § 42-18.[12]

---

[12] The defendant's request to charge was as follows:

"Cruelty to Persons § 53-20 as Lesser Included Offenses:

In his request to charge, the defendant merely stated the facts as alleged in the informations and then equated

"With regard to each of the counts alleged in the informations, the defendant requests that the court instruct the jury that it may consider as a lesser included offense the charge of cruelty to persons.

"Cruelty to persons, C.G.S. § 53-20, prohibits in relevant part a person from torturing, tormenting or cruelly or unlawfully punishing another.

"As alleged in each count of each of the two informations, the defendant could not have committed the greater charge without first committing the lesser charge of cruelty to persons.

"A. [Docket No.] 17-94222:

"1. Count One alleges that the defendant committed sexual assault in the third degree when he compelled another to submit to sexual contact by the use of force or threat of force when he touched the male's genital area with his finger or with ice. As alleged, the defendant could not have committed this charge without first committing the charge of cruelty to persons in that the jury could reasonably conclude that such alleged conduct constitutes torture, torment or cruel or unlawful punishment.

"2. Count Two alleges that the defendant committed risk of injury to a minor when he touched the male victim's genital area with his finger or ice, thereby doing an act which impaired or was likely to impair the morals of a child. As alleged, the defendant could not have committed this charge without first committing the lesser charge of cruelty to persons in that the jury could reasonably conclude that such conduct constitutes torture, torment or cruel or unlawful punishment.

"B. [Docket No.] 17-94223:

"1. In Count One, the state alleges that the defendant committed sexual assault in the first degree when he engaged in sexual intercourse with a person under 13 and he was more than two years older than the victim, by inserting his finger or ice inside the genital opening. As alleged, the defendant could [not] have committed this greater charge without first committing the lesser charge of cruelty to persons in that the jury could reasonably conclude that the conduct constitutes torture, torment or cruel or unlawful punishment.

"2. In Count Two, the state alleges that the defendant committed sexual assault third by compelling the person to submit [sic] victim's genital area with his finger or with ice. As alleged, the defendant could not have committed the greater offense without first committing the lesser in that the jury could reasonably conclude that the conduct constitutes torture, torment or cruel or unlawful punishment.

"3. In counts Three and Four, the state alleges that the defendant committed risk of injury to a minor by doing an act which was likely to impair the morals of a minor by touching the female genital area with ice or with a finger, and by kissing the victim on the mouth and touching her lip with his tongue. As alleged, the defendant could not have committed the greater offenses without first committing the lesser offense in that the jury could reasonably conclude that the conduct constitutes torture, torment or cruel

those facts to the behavior of torturing, tormenting or cruelly or unlawfully punishing as proscribed by § 53-20. Furthermore, the defendant did not, as required under Practice Book § 42-18, provide any authority for his requested charge. The only reference he provided to support his position was § 53-20, the statute under which he sought the jury instruction. The defendant's request to charge, in our view, is "[a] mere general statement of the entire incident at issue [which] does not comply with our rules of practice." *State* v. *Hall*, supra, 213 Conn. 591–92; see *State* v. *Tomasko*, supra, 238 Conn. 263. Because we conclude that the defendant failed to satisfy the first prong of *Whistnant*, we need not consider the remaining conditions.

The judgments are affirmed.

In this opinion the other judges concurred.