OPINION
{¶ 1} Defendant-appellant, Todd David Presley, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of three counts of rape in violation of R.C. 2907.02.
 {¶ 2} On July 23, 2001, defendant was indicted on 18 counts of rape in violation of R.C. 2907.02. Counts one through three alleged sexual conduct with the victim from October 1, 1994, to August 31, 1995. Counts four through six alleged sexual conduct with the victim from September 1, 1995, to September 30, 1996. Counts seven through nine alleged sexual conduct with the victim from October 1, 1996, through March 31, 1997. Counts 10 through 12 alleged sexual conduct with the victim from April 1, 1997, to July 31, 1998. Counts 13 through 15 alleged sexual conduct with the victim from August 1, 1998, through February 29, 1999. Counts 16 through 18 alleged sexual conduct with the victim from March 1, 1999, through September 10, 2000. All 18 counts alleged that the victim was less than 13 years of age. In addition, counts 10 through 18 alleged that defendant purposely compelled the victim to submit by force or threat of force.
 {¶ 3} The case was tried before a jury in July 2002. The state's first witness was the alleged victim, Josephine ("Josie") Anthony, age 13 at the time of trial. Josie testified that, when she and her family, which included defendant, her stepfather, her mother, Tamara Presley, her sister and two brothers, moved to Columbus, they lived with defendant's father and his wife. Thereafter, the family lived in several different houses, sometimes with other relatives.
 {¶ 4} Josie stated that defendant engaged in sexual conduct with her at each of the houses she lived in, whenever her mother was out of the house. According to Josie, defendant would tell her siblings to go outside or watch a movie prior to abusing her. Specifically, Josie testified that defendant would "[p]ut his private in [her] butt," and "touch her private" with his tongue. She further testified that defendant sometimes put "clear white stuff" that came out of a toothpaste-type container on his private before he "put it in [her] butt." Josie stated that her butt hurt less when defendant put the "clear white stuff" on his private. Id. She also related that defendant made her "lick his dick" and put it into her mouth, and that, when "yellow stuff" from his "private" came out into her mouth, he made her "spit it out in a towel or swallow it." She testified that the "yellow stuff" tasted "nasty." She averred that, when defendant made her "suck on his private," he usually would be standing up and he would make her get on her knees. She further testified that defendant would sometimes put his mouth on her private at the same time she had to "suck on his private." Josie stated that, when this happened, she and defendant would lie on the bed with their feet "at the end of [each other's] head." Josie further testified that defendant sometimes showed her "sex movies." Josie related that she was "afraid" when the abuse occurred, that she did not want it to happen, and that she did not think she could say no to defendant. She also averred that defendant told her not to tell her mother about the incidents.
 {¶ 5} Josie averred that she did not tell her mother what defendant had done to her until after her sister caught her performing oral sex on one of her brothers and threatened to tell their mother. Over the objection of defense counsel, Josie testified about problems she experienced subsequent to reporting the sexual abuse to her mother.
 {¶ 6} Tamara Presley testified that she married defendant in 1992. The family moved to Columbus in 1994 and lived with defendant's father and his wife for approximately one year. In 1995, the family, with the addition of defendant's mother, moved to a home on Spruce Drive. In April 1997, the family moved to a home on Lockbourne Road. Between July 1998 and February 1999, the family lived with defendant's grandmother. In February 1999, the family moved to a house on Kelton Avenue where they lived together until defendant moved out in October 2000.
 {¶ 7} On October 6, 2000, Josie disclosed to Presley what had happened with defendant. Presley immediately called defendant at work and demanded that he return home. Upon his arrival, Presley confronted him with Josie's accusations. Over the objection of defense counsel, Presley was permitted to testify as to problems Josie experienced after the alleged rapes.
 {¶ 8} On cross-examination, Presley testified that none of the physicians who provided medical services to Josie during the period that defendant was allegedly sexually abusing Josie ever expressed concern that Josie had been sexually abused. She further averred that none of Josie's siblings reported seeing defendant abuse Josie or otherwise observed any unusual behavior.
 {¶ 9} Teresa Hedges-Wydick, a licensed clinical social worker at Children's Hospital, interviewed Josie in the emergency room in October 2000. According to Hedges-Wydick, Josie stated that her stepfather had been "touching" her for a long time, whenever her mother was at work or asleep, and that the last incident had occurred around Labor Day 2000. In particular, Josie reported to Hedges-Wydick that defendant "sucked [her] privates," "stuck his private in [her] butt and it hurt," and that "yellow stuff came out of his private." Josie further related to Hedges-Wydick that defendant told her not to tell her mother. Hedges-Wydick also testified that Josie averred that defendant had shown her videotapes of people who were not wearing any clothes. Hedges-Wydick indicated that Josie gave descriptive, appropriate, spontaneous answers to her open-ended questions and spoke in complete sentences. Hedges-Wydick also testified that, during the interview, she utilized drawings of both female and male anatomy to assist Josie in describing what had occurred.
 {¶ 10} On cross-examination, Hedges-Wydick testified that she was familiar with both the concept of "suggestivity"; that is, where children are sometimes susceptible to suggestions made by an adult through questions asked during an interview, as well as with research indicating that suggestivity in sexual abuse cases involving children could sometimes lead to false allegations being made. She further indicated that she had been trained to employ certain measures aimed at avoiding the possibility of suggestivity, such as keeping careful records of interviews and asking open-end questions. Hedges-Wydick further testified that she learned that Presley had been sexually abused as a child and, thus, had heightened concern about sexual abuse. She further testified that she was not present at the time Presley initially questioned Josie about defendant's alleged sexual conduct.
 {¶ 11} Dr. Mary Elizabeth Osterlund examined Josie in the hospital emergency room on October 6, 2000. Dr. Osterlund testified that hospital records prepared during the examination reflected that Josie was "mildly developmental[ly] delay[ed]." Dr. Osterlund further testified that the physical examination of Josie revealed no redness or irritation around the perineal area and no abnormality involving the rectum, anus, or genitalia. Dr. Osterlund testified that such findings were consistent with the history provided by Josie; that is, that the last incidence of alleged abuse occurred approximately one month prior to the examination and that defendant often used a lubricant in performing anal intercourse. Dr. Osterlund explained that abnormalities are more difficult to discover if the examination is not conducted within a short time after the sexual conduct occurs. She further explained that, even if an examination occurs within a short time after sexual conduct, it may still be possible to find no physical trauma to either the genitalia, anus, or rectum.
 {¶ 12} The state's final witness was Victoria Fullen, a detective with the Columbus Police Department. Fullen testified that she became involved with the case in October 2000, through a sexual abuse complaint. She further testified that her investigation of the matter consisted of reviewing hospital records prepared at the time of Josie's physical examination and conducting several interviews. In particular, she testified that she interviewed Presley in November 2000, and Josie in April 2001. She also interviewed defendant and the hospital social workers. She testified that she did not interview Josie's siblings, relatives, neighbors, or teachers because Josie's interview did not suggest that anyone had either seen or had any reason to suspect sexual abuse. Similarly, she testified that she did not visit any of the houses where the rapes were alleged to have occurred nor collected any physical evidence because the alleged abuse had not been reported until well after it occurred; thus, no physical evidence remained to be collected. On redirect examination, over the objection of defense counsel, Fullen recounted statements Josie made during the interview concerning a diagram she made regarding the incidents.
 {¶ 13} Defendant testified on his own behalf. He testified that, when Presley and Josie confronted him in October 2000, with the allegations of sexual misconduct, he immediately denied all the allegations. He further testified that Presley had previously contacted Franklin County Children Services and was advised that the children would be removed from the house if defendant did not leave immediately. To avoid that possibility, defendant left the house that day. He was subsequently contacted and interviewed by Fullen. Defendant stated that, although he told Fullen he had not done what Josie had accused him of doing, it was apparent that Fullen did not believe him.
 {¶ 14} On cross-examination, defendant testified that he was considered the "disciplinarian" in the house and, if the children talked back to him after he told them to do something, they would "probably get put in time-out or get their butt busted." He further testified that Josie was "known for lying." To that end, he noted that most of the lies she told were innocuous, such as breaking something and not admitting to it.
 {¶ 15} At the close of the state's case, the court dismissed counts 13, 14 and 15 due to insufficient evidence on venue. Defense counsel moved for dismissal of the remaining charges pursuant to Crim.R. 29, both following presentation of the state's case and at the close of defendant's case. The trial court overruled both motions.
 {¶ 16} Following deliberations, the jury acquitted defendant on counts one through twelve. The jury found defendant guilty on counts 16, 17 and 18, and returned verdicts finding that the victim was under the age of 13 years and that defendant purposely compelled the victim to submit by force or threat of force.
 {¶ 17} On August 2, 2002, defendant filed a motion for new trial pursuant to Crim.R. 33(A), on the ground that defendant was deprived of a fair trial as a result of juror misconduct. The motion requested, in the alternative, that the court schedule a hearing in order to conduct a voir dire of the challenged juror. The court granted defendant's request for a hearing, but did not permit the challenged juror to be subpoenaed to testify. At the October 7, 2002 motion hearing, the court heard the arguments of counsel and took the matter under advisement.
 {¶ 18} The case proceeded to sentencing on October 15, 2002, at which time the court orally overruled defendant's motion for new trial. By judgment entry filed October 17, 2002, the trial court adjudicated defendant a sexual predator and sentenced him to life imprisonment on each of the three counts for which he was found guilty and ordered the sentences to be served concurrently. Defendant appealed the trial court's judgment to this court. On November 14, 2002, this court sua sponte dismissed the appeal as premature, as the motion for new trial remained pending in the trial court. By entry filed November 2, 2002, the trial court subsequently entered judgment denying defendant's motion for new trial. Defendant's original notice of appeal was redocketed and the matter is now before this court for resolution. Defendant asserts eight assignments of error, as follows:
[1]. The Trial Court Improperly Admitted Hearsay Statements Of The Alleged Victim In Violation Of The Rules Of Evidence And Appellant's Right To Due Process Of Law As Guaranteed By The Fourteenth Amendment To The United States Constitution And Compar-able Provisions Of The Ohio Constitution.
[2]. The Trial Court Violated Appellant's Right Of Confrontation As Guaranteed By The Sixth And Fourteenth Amendments To The United States Constitution And Comparable Pro-visions Of The Ohio Constitution By Improperly Admitting Hearsay Statements Of The Alleged Victim, By Limiting Cross-examination Of The Alleged Victim, And By Permitting The Alleged Victim To Clutch A Teddy Bear While Being Subject To Cross-examination.
[3]. The Trial Court's Jury Instruction Defining "force" Created A Mandatory Conclusive Pre-Sumption That Relieved The Prosecution Of Its Burden Of Proving This Element Beyond A Reasonable Doubt In Violation Of Due Process Of Law And Appellant's Right To Trial By Jury As Guaranteed By The Sixth And Fourteenth Amendments To The United States Constitution And Comparable Provisions Of The Ohio Constitution.
[4]. The Trial Court Erred And Thereby Deprived Appellant Of Due Process Of Law As Guaranteed By The Fourteenth Amendment To The United States Constitution And Compar-able Provisions Of The Ohio Constitution By Overruling Appellant's Crim.R. 29 Motion For Judgment Of Acquittal, As The State Failed To Offer Sufficient Evidence To Prove Each And Every Element Of The Charges Beyond A Reasonable Doubt.
[5]. The Trial Court Erred And Thereby Deprived Appellant Of Due Process Of Law As Guaranteed By The Fourteenth Amendment To The United States Constitution And Compar-able Provisions Of The Ohio Constitution By Finding Defendant Guilty, As The Verdicts Of Guilty Were Against The Manifest Weight Of The Evidence.
[6]. The Trial Court Erred And Thereby Deprived Appellant Of Due Process Of Law As Guaranteed By The Fourteenth Amendment To The United States Constitution And Compar-able Provisions Of The Ohio Constitution By Denying His Motion For A New Trial Based Upon Juror Misconduct.
[7]. The Prosecuting Attorney Committed Prosecutorial Misconduct And Thereby Deprived Appellant Of A Fair Trial As Guaranteed By The Due Process Clause Of The Fourteenth Amendment And Comparable Provisions Of The Ohio Constitution.
[8]. The Trial Court Erroneously Admitted Evidence Of Post-traumatic Stress Disorder In The Absence Of Any Expert Testimony In Violation Of The Rules Of Evidence And Thus Deprived Appellant Of Due Process Of Law As Guaranteed By The Fourteenth Amendment To The United States Constitution And Compar-able Provisions Of The Ohio Constitution.
 {¶ 19} By his first assignment of error, defendant contends that improper hearsay evidence was admitted at trial. Specifically, defendant claims that, after the state pre-sented Josie's testimony, Detective Fullen was improperly permitted to bolster Josie's testimony through a hearsay document and corresponding statements made by Josie during her interview with Fullen.
 {¶ 20} The record reveals that, on cross-examination, defense counsel questioned Fullen regarding the thoroughness of her investigation. This questioning revealed that Fullen's investigation was essentially limited to an interview with Josie in April 2001. As she had previously testified on direct examination, she averred that she did not conduct interviews with Josie's siblings, relatives, neighbors, babysitters, classmates, teachers, or other school personnel because the history Josie reported in the interview did not suggest that anyone had either seen or had any reason to suspect sexual abuse. Similarly, Fullen testified that she did not visit the scenes where the alleged criminal acts took place and neither took photographs nor collected physical evidence because the alleged abuse had not been reported until well after it occurred; thus, no physical evidence remained to be collected. Fullen explained that she did not need to conduct any additional investigation, as the history provided by Josie did not establish that any further investigation was necessary. Toward the end of cross-examination, defense counsel inquired as to whether there was any "independent proof" of the crime other than the history Josie recounted during the interview. Fullen testified that there was nothing to add to that history.
 {¶ 21} On re-direct examination, the prosecution sought to admit a diagram prepared by Josie during her interview with Fullen. The diagram included two separate images and the word "sex." (State's Exh. 6.) Over defense counsel's objection, Fullen referenced the diagram repeatedly, explaining what Josie told her as she prepared the diagram. In particular, Fullen testified that the first image was Josie's depiction of a penis. Fullen further testified that the second image was two stick figures depicting the positions Josie and defendant would be in when they were performing oral sex on each other. Finally, Fullen testified that Josie wrote the word "sex" in response to her question about whether defendant showed her pornographic videotapes.
 {¶ 22} A trial court has broad discretion in the admission or exclusion of evidence and, so long as such discretion is exercised within the boundaries of the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. Rigby v. Lake Cty. (1991),58 Ohio St.3d 269, 271. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 23} Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." For purposes of the foregoing definition of hearsay, a "statement" includes "an oral or written statement." Evid.R. 801(A). Evid.R. 802 provides that hearsay is generally inadmissible as evidence.
 {¶ 24} We agree with defendant's contention that the diagram created by Josie and her corresponding statements to Fullen qualified as hearsay and were improperly admitted at trial. Josie created the diagram during the course of her interview with Fullen in an effort to explain her allegations. Josie then made statements describing the diagram and what it represented. Both the diagram and the statements were out-of-court assertions by Josie to Fullen. In general, although "some hearsay statements are admissible in criminal proceedings," such statements are admissible only when, "after a good faith effort by the prosecution to produce her, the declarant is unavailable to testify." State v. Self (1990), 56 Ohio St.3d 73, 81-82. In the instant case, Josie cannot be said to have been unavailable to testify, since she appeared at trial.
 {¶ 25} At trial, the prosecution argued that the diagram and Josie's corresponding statements to Fullen were admissible and non-hearsay because they were offered not to prove the truth of the matter asserted therein, but to rebut defense counsel's cross-examination regarding the alleged inadequacies of Fullen's investigation. More specifically, the prosecution maintained that the diagram and statements were not hearsay because they were offered only as "additional corroboration" of the crime apart from the history Josie provided during the interview. According to the prosecution, this "additional corroboration" explained why Fullen did not conduct further investigation beyond interviewing Josie. The trial court adopted this position and permitted the prosecution to submit the diagram as an exhibit. The trial court explained:
THE COURT: * * * [T]he Court allowed the examination concerning this document and concerning other techniques that were used during the interview with the alleged victim because there was a vigorous attack upon this detective about not doing her job properly. I felt it appropriate that the State should be able to respond appropriately showing she did do her job the way she felt was appropriate, and that's the reason I allowed the questioning.
You went over and over and over again about there not being any sort of independent proof other than the statement of the girl. To the extent that State's Exhibit 6 [the diagram] represents something independent of her statement, there is a drawing of what is purported to be a penis, there are stick figures that show people, I'm assuming this is supposed to represent mutual oral sex, the position that she described here in the courtroom, then there is the word sex that apparently was in response to: What kind of video did you see?
In examining this technically, this isn't being submitted to prove the truth of anything in it. We're not trying to prove penis, we're not trying to prove sex, and we're not trying to figure stick figures in a 69 position.
Court is going to admit State's Exhibit No. 6 over objection. * * *
 {¶ 26} As defense counsel argued at trial, the tenor of cross-examination was to demonstrate that Fullen failed to conduct any meaningful investigation beyond interviewing Josie. Fullen testified that, during the interview, she provided Josie with the paper upon which Josie created the challenged diagram. Thus, the diagram was merely one component of the interview and does not, as determined by the trial court, represent "something independent of [Josie's] statement." Thus, the diagram cannot be used to demonstrate that Fullen did more than interview Josie, as the diagram was inextricably linked to the interview.
 {¶ 27} Further, even assuming that the diagram was "something independent of [Josie's] statement," the court permitted the prosecution to offer considerably more than the diagram. The prosecution questioned Fullen about what was depicted in the diagram and she provided a detailed explanation of what Josie told her while creating the diagram and writing the word "sex." If the court's rationale was that the diagram demonstrated that more than a simple interview was conducted, this goal was met when Fullen explained that Josie created a diagram during the interview. Under the theory espoused by the prosecution and adopted by the court, the existence, not the substance and content, of the diagram was important. Thus, by admitting the content of the drawing along with Josie's out-of-court statements to Fullen, the court far exceeded the alleged admissible purpose.
 {¶ 28} Further, to the extent the state argues that the statements were offered solely to explain Fullen's conduct while investigating the crime, that is, to demonstrate that no additional investigation was necessary, we note that generally, out-of-court statements offered to explain a police officer's conduct while investigating a crime, rather than for their truth, are not hearsay. State v. Thomas (1980),61 Ohio St.2d 223, 232. However, where out-of-court statements are admitted merely to explain a police officer's conduct during the course of an investigation, "the potential for abuse in admitting such statements is great." State v. Blevins (1987), 36 Ohio App.3d 147, 149.
 {¶ 29} If the intended purpose of the diagram and Josie's statements to Fullen as to what the diagram represented was to demonstrate that no additional investigation was necessary, then these statements were necessarily offered for their truth. The diagram was then being offered to corroborate what Josie told Fullen in order to justify no further investigation. If the diagram was offered to corroborate Josie's statements, then it was offered to establish the truth of its contents.
 {¶ 30} This conclusion is further buttressed by the fact that, during rebuttal argument, the prosecutor attempted to use the drawing as substantive proof of defendant's guilt, by stating as follows:
Now, Detective Fullen in her investigation had this drawn for her:
What type of movies?
Sex movies.
What did his penis look like? What things did you do?
 {¶ 31} In our view, this passage demonstrates that the prosecutor's primary objective in introducing the diagram and Josie's accompanying statements was for their truth and not to explain Fullen's subsequent actions.
 {¶ 32} Finally, regarding the state's contention on appeal that the diagram and Josie's statements were offered only in response to defense counsel's cross-examination, we note that a review of Fullen's entire testimony reveals that the cross-examination was in response to her direct examination. On direct, Fullen testified that she did not interview Josie's siblings, relatives, or teachers because Josie's interview did not suggest that anyone had either seen or had any reason to suspect sexual abuse. Similarly, she testified that she did not visit any of the houses where the rapes were alleged to have occurred or collect any physical evidence because the alleged abuse had not been reported until well after it occurred; thus, no physical evidence remained to be collected. Thus, Fullen's direct testimony had already established why no further investigation was conducted and this explanation contained no reference to Josie's diagram or her statements explaining it.
 {¶ 33} While error occurred in the admission of hearsay testimony, we must still determine whether such error was prejudicial. Regarding whether the admission of hearsay evidence unduly prejudiced defendant, "the evidence in favor of conviction, absent the hearsay, must be so overwhelming that the admission of those statements was harmless beyond a reasonable doubt." State v. Kidder (1987), 32 Ohio St.3d 279,284.
 {¶ 34} Upon review of the record, we are unable to conclude that the evidence against defendant was so overwhelming that the jury could not have been reasonably influenced by the hearsay testimony in which Fullen was permitted to essentially repeat Josie's story. The determinative issue in this case was credibility, i.e., whether the jury chose to believe the testimony of Josie or defendant. There was no conclusive physical evidence, no corroborating witnesses, and no independent proof of Josie's allegations. In order to convict defendant, the jury had to believe Josie. The effect of permitting the hearsay evidence offered by Fullen was to bolster Josie's testimony and her credibility. Moreover, the effect of this error was not diminished by the fact that Josie testified at trial and was subject to cross-examination. State v. Lewis (Apr. 28, 1994), Franklin App. No. 93AP-911. In considering the effect of the error at trial in a case where the issue of credibility was determinative, we cannot conclude that such error was harmless beyond a reasonable doubt. Defendant's first assignment of error is sustained.
 {¶ 35} Defendant's second assignment of error contends that the trial court violated its right to confrontation as guaranteed by both the federal and state constitutions by improperly admitting hearsay statements of the alleged victim, by limiting cross-examination of the alleged victim, and by permitting the alleged victim to hold a teddy bear during cross-examination.
 {¶ 36} The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The Confrontation Clause of the Sixth Amendment has been made applicable to the states through the Fourteenth Amendment. State v. Collymore, Cuyahoga App. No. 81594, 2003-Ohio-3328, at ¶ 14. " `The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.' " State v. Madrigal (2000), 87 Ohio St.3d 378, 384, quoting Maryland v. Craig (1990), 497 U.S. 836, 865, 110 S.Ct. 3157.
 {¶ 37} Defendant first contends, in conjunction with his second assignment of error, that, when the trial court improperly allowed Fullen's hearsay testimony regarding the diagram and Josie's corresponding statements, defendant's constitutional right to cross-examine Josie regarding the diagram and statements was violated. Hearsay violates the Confrontation Clause unless the declarant is unavailable and the hearsay falls within a "firmly rooted exception." Collymore, supra, citing White v. Illinois (1992), 502 U.S. 346, 356,112 S.Ct. 736.
 {¶ 38} In the instant case, the state has not contended, either at trial or on appeal, that the complained of hearsay testimony falls within a "firmly rooted exception." Further, the state has not demonstrated that the declarant, Josie, was unavailable to testify at trial. Accordingly, Fullen's testimony regarding the substance and content of the diagram and Josie's statements explaining the diagram violated defendant's right to confrontation as guaranteed by the Confrontation Clause.
 {¶ 39} Defendant next contends that the trial court infringed upon his right of confrontation by improperly limiting defense counsel's cross-examination of Josie. As with other evidentiary determinations, the "scope of cross-examination `lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case. Such exercise of discretion will not be disturbed in the absence of a clear showing of an abuse of discretion.' " State v. Slagle (1992),65 Ohio St.3d 597, 605, citing State v. Acre (1983), 6 Ohio St.3d 140,145.
 {¶ 40} On re-direct examination, the prosecution established that, after Josie disclosed the allegations to her mother, she subsequently discussed it with several other persons, including several doctors, a nurse, a social worker, two detectives, a witness assistance advocate, and the prosecutor. The obvious purpose of the prosecution's questioning was to bolster Josie's credibility by establishing that she had told consistent versions of the events to all these individuals. Following this testimony, defense counsel cross-examined Josie concerning the influence that these other individuals might have had over her testimony. The following colloquy occurred during Josie's re-cross-examination:
Q. Josie, you just talked about a lot of people that you spoke with about this, right?
A. Yes.
Q. Doctors and nurses and social workers?
A. Yes.
Q. And detectives, a representative of the Prosecutor's Office?
A. Yes.
Q. Mr. Welch himself, right?
A. Yes.
Q. And they encouraged you to tell your story, right?
A. I wanted to tell them.
Q. And you told your story to the detectives, they told you that you were a brave little girl, right?
A. I think so.
Q. They told you that you were doing a great job, right?
A. Yes.
Q. And they encouraged you to tell this story against Todd?
MR. WELCH: Objection, Your Honor.
THE COURT: Sustained.
 {¶ 41} We fail to see how the trial court abused its discretion or violated defendant's right of confrontation in sustaining the prosecution's objection to defense counsel's final question in this series. At the time the challenged question was posed, Josie had already answered three similar questions, including one nearly identical to the question at issue. Through the prior questions, defense counsel was able to advance the theory that Josie's allegations may have been suggested, influenced or encouraged, either intentionally or unintentionally, by authorities to whom she disclosed the allegations.
 {¶ 42} Finally, defendant contends that his right to confrontation was violated and he was otherwise denied a fair trial, as a result of the trial court's decision to allow Josie to hold a stuffed teddy bear during cross-examination.
 {¶ 43} After Josie delivered her direct testimony, the court recessed for the evening, with cross-examination to begin the following morning. Prior to the commence-ment of cross-examination, the prosecution informed the court and defense counsel that Josie wished to hold a stuffed teddy bear while she testified. Defense counsel objected on the basis that such action would garner unfair sympathy for Josie and violate defendant's right of confrontation, especially given that she did not hold a teddy bear during direct examination. The court summarily overruled defendant's objection.
 {¶ 44} Evid.R. 611 empowers a trial court with broad discretion in controlling the mode and order of interrogating witnesses and presenting evidence "so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Thus, a procedure implemented by a trial court to elicit testimony from a witness will not be disturbed on appeal absent a showing that the court abused its discretion. State v. Johnson (1986), 38 Ohio App.3d 152, 154.
 {¶ 45} A review of the record reveals that the trial court's decision to permit Josie to hold a stuffed teddy bear during cross-examination neither diminished defendant's constitutional right to confront his accuser nor prejudiced his right to a fair trial. Although Josie was 13 years old at the time of trial, she was described as being "mildly developmental[ly] delay[ed]." The court's control over the mode of interrogation appeared to have struck a balance between ascertaining the truth and protecting Josie from undue embarrassment. Defendant makes much of the fact that Josie did not hold the teddy bear while she testified on direct examination. However, it is understandable that Josie might feel more embarrassed and vulnerable answering questions posed by defense counsel with whom she was unfamiliar than she would be in answering questions posed by the prosecutor whom she had already met. "The protection of children from undue trauma when testifying is an important public policy goal." State v. T.E. (2001), 342 N.J. Super. 14,30, 775 A.2d 686. Furthermore, allowing Josie to hold a stuffed teddy bear while she testified did not deny defendant his right to a face-to-face confrontation with his accuser. The record indicates that defendant was given a full and fair opportunity to explore and expose any infirmities in Josie's testimony through cross-examination.
 {¶ 46} Many courts have permitted a variety of methods to facilitate the presentation of the testimony of the child-victim witness in cases of sexual assault or abuse. In Johnson, supra, the court held that it was neither a constitutional violation nor an abuse of the trial court's discretion to allow an eight-year-old victim to sit on the lap of a relative during the presentation of the victim's testimony. One court permitted a five-year-old victim to sit on his father's lap while testifying. State v. Barnhart (July 20, 1992), Clermont App. No. CA91-08-066. That court also permitted an adult to sit beside a 13-year-old victim during the presentation of her testimony. State v. Walton (Nov. 4, 1991), Clermont App. No. CA91-03-022. In a situation similar to the instant case, the court found no abuse of discretion or violation of the defendant's confrontation rights in permitting a child victim to hold a large stuffed animal while testifying. State v. McPhee (2000), 58 Conn. App. 501, 755 A.2d 893. Finally, in In re Sechler (Aug. 29, 1997), Trumbull App. No. 96-T-5575, the court determined that the trial court neither abused its discretion nor violated the defendant's right of confrontation in permitting a mother to stand by her 19-year-old mentally retarded daughter while the daughter testified. The court explained:
In this case, the trial judge * * * struck the appropriate balance between the goals of Evid.R. 611(A) and appellant's constitutional right of confrontation. It is difficult for a rape victim of average intelligence to testify concerning the particulars of the incident, owing to the violent nature of the crime. The additional complicating factor here was [the victim's] mental retardation. The approach that was taken by the court in this case clearly facilitated [the victim's] testimony. * * * We fail to perceive how appellant suffered prejudice in this regard. * * *
 {¶ 47} Finally, we disagree with defendant's contention that the court's decision to allow Josie to hold the teddy bear garnered unfair sympathy for her. We note that the court instructed the jury that it was not to be influenced in its decision by sympathy, prejudice, or passion toward any party, witness or attorney. A jury is presumed to follow the trial court's cautionary instructions. State v. Treesh (2001),90 Ohio St.3d 460, 480. There is no evidence of record establishing that defendant was unfairly prejudiced by Josie holding a teddy bear on cross-examination. To the limited extent indicated, defendant's second assignment of error is sustained.
 {¶ 48} Defendant's third assignment of error maintains that the trial court erred in instructing the jury on the definition of "force."
 {¶ 49} R.C. 2907.01(A)(1) defines "force" to mean "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." In State v. Eskridge (1988), 38 Ohio St.3d 56, a case involving a parent accused of sexually assaulting his four-year-old child, the Ohio Supreme Court broadened the definition of force. The court held at paragraph one of the syllabus:
The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength. * * *
 {¶ 50} In the body of the opinion, the court recognized "the coercion inherent in parental authority when a father sexually abuses his child." Id. at 58. As such, the court averred that "[f]orce need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.' " Id. at 58-59, quoting State v. Fowler (1985), 27 Ohio App.3d 149, 154.
 {¶ 51} The trial court, in the instant case, instructed the jury as follows:
* * * Force means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.
We have used the term threat as in threat of force. Threat includes direct or indirect threat. When the relationship between the victim and the Defendant is one of child and parents the element of force need not be openly displayed or physically brutal. It can be subtle or slight and psychological or emotionally powerful.
If you find beyond a reasonable doubt that under the circumstances in evidence the victim's will was overcome by fear, duress, or intimidation the element of force has been proved. [Emphasis added.]
 {¶ 52} Defendant contends that the italicized portion of the instruction creates a mandatory conclusive presumption that force was used, predicated on the stepchild/stepparent relationship between Josie and defendant. Defendant maintains that, although the instruction seeks on its face to provide some situation where force could not be present, in application, there is no conceivable circumstance where force cannot be found if the relationship is one of parent and child.
 {¶ 53} The jury instruction employed by the trial court in this case has been the subject of consideration by other courts of this state. Unfailingly, those courts have deter-mined that such language is appropriate, given the Ohio Supreme Court's discussion and holding in Eskridge. See State v. Oddi, Delaware App. No. 02CAA01005, 2002-Ohio-5926, at ¶ 56; State v. Sidlovsky (July 10, 1996), Lorain App. No. 95CA006253; and State v. Johnson, Cuyahoga App. No. 80436, 2002-Ohio-7057. Moreover, while the trial court instructed the jury that force need not be "openly displayed or physically brutal," it did not indicate that force was to be presumed on the basis of the stepchild/stepparent relationship. Rather, the instruction specifically indicated that force could be "subtle or slight and psychological or emotionally powerful." Defendant's third assignment of error is overruled.
 {¶ 54} Defendant maintains in his fourth assignment of error that the trial court erred by denying his Crim.R. 29 motion for acquittal because the evidence was insufficient to support a finding of guilt.
 {¶ 55} Crim.R. 29(A) provides, in part, the following:
The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *
 {¶ 56} A motion for acquittal may be granted only where the evidence is insufficient to sustain a conviction. State v. Apanovitch (1987), 33 Ohio St.3d 19, 23. In reviewing the sufficiency of the evidence in a criminal case, an appellate court will not reverse a conviction where the evidence, viewed in a light most favorable to the prosecution, would convince the average mind of appellant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 273.
 {¶ 57} At the time the crimes were committed, R.C. 2907.02
provided, in part:
(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:
* * *
(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
* * *
(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
* * *
(B) * * * If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life.
 {¶ 58} At the time the crimes were committed, R.C. 2907.01(A) defined "sexual conduct," in pertinent part, as: "anal intercourse, fellatio, and cunnilingus between persons regardless of sex * * *. Penetration, however slight, is sufficient to complete * * * anal intercourse."
 {¶ 59} Our review of the trial testimony convinces us that there was sufficient evidence elicited on each element of the three counts of rape to sustain defendant's convictions and to support the trial court's overruling of defendant's Crim.R. 29 motion for acquittal. Initially, we reject defendant's argument that there was insufficient evidence to prove that the specific acts occurred during the period of time specified in the indictment. Counts 16, 17 and 18 alleged cunnilingus, fellatio and anal intercourse, respectively, from "on or about March 1, 1999 to September 10, 2000." "It is well established that, particularly in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses oftentimes cannot be determined with specificity." State v. Daniel (1994), 97 Ohio App.3d 548, 556. This rule has been established because "[i]n many cases involving child sexual abuse, the victims are children of tender years who are simply unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time." State v. Mundy (1994), 99 Ohio App.3d 275, 296.
 {¶ 60} Josie, the victim in this case, is a developmentally delayed girl, approxi-mately ten years old at the time these crimes were committed against her. As such, it is quite possible that she may be unable to remember exact dates and times, especially considering that the same conduct occurred during an 18-month period of time and continued until she reported it to her mother.
 {¶ 61} Moreover, Presley testified that the family lived on Kelton Avenue between February 1, 1999, and October 6, 2000. Coupled with Josie's testimony that defendant committed the acts in the Kelton Avenue house, such evidence sufficiently narrowed the time frame to that specified in the indictment.
 {¶ 62} We further reject defendant's contention that Josie provided "vague references" to the alleged sexual abuse and could not identify with any specificity how the acts occurred. To the contrary, Josie testified that defendant touched her "private" with his tongue, made her "lick his dick" and put it in her mouth and put his "private" in her "butt." On anatomical diagrams of both the male and female human body, Josie identified a male's penis as his "private" and a female's vagina as her "private." Josie's testimony sufficiently describes the acts of cunnilingus, fellatio and anal intercourse.
 {¶ 63} Defendant also contends that the prosecution did not prove the element of force. As we noted in our discussion of the third assignment of error, when the relation-ship between the victim and the offender is one of stepchild and stepparent, the element of force need not be proved by evidence of openly displayed or physically brutal violence, compulsion or physical restraint. Rather, the force may be subtle and psychological or emotionally powerful and may be proved by evidence demonstrating that the victim's will was overcome by fear or duress.
 {¶ 64} Josie repeatedly testified that defendant "made" her engage in sexual conduct with him. She further related that she was "afraid" when the sexual conduct occurred, that she did not want it to happen, and that she did not think she could say no to her stepfather. She further averred that defendant told her not to tell her mother about the abuse. Moreover, defendant testified that he was the children's disciplinarian and, if they disobeyed him, he would punish them. Based upon this evidence, we find nothing unreasonable about a finding that Josie's will was overcome by fear or duress. Con-sequently, the forcible element of rape was properly established. Defendant's fourth assignment of error is overruled.
 {¶ 65} Defendant's fifth assignment of error contends that his convictions are against the manifest weight of the evidence. In determining whether a conviction is against the manifest weight of the evidence, the reviewing court sits as a "thirteenth juror." As such, it is our obligation to review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses to determine " `whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " State v. Thompkins (1997), 78 Ohio So.3d 380, 387. Reversing a conviction as being against the manifest weight of the evidence is one reserved for only the most " `exceptional case in which the evidence weighs heavily against the conviction.' " Id. The weight to be given the evidence and the credibility of witnesses is primarily an issue for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 66} After reviewing the record and weighing the evidence presented in this case, we conclude that the evidence against defendant is sufficiently credible to support his convictions for rape.
 {¶ 67} Defendant asserts that there was no medical evidence establishing that Josie had been repeatedly sexually abused. However, Josie testified, albeit in a simplistic manner, that she and defendant engaged in cunnilingus, fellatio and anal intercourse in each of the houses the family lived in since moving to Columbus. She offered additional testimony that the abuse occurred by describing the acts in detail, including the physical positions she and appellant assumed while engaging in the acts, the use of lubricant, and defendant's ejaculations.
 {¶ 68} Further, Hedges-Wydick testified that, when she interviewed Josie in the hospital, Josie spontaneously disclosed that defendant had sexually abused her. The details of the abuse Josie reported to Hedges-Wydick were consistent with those Josie testified to at trial.
 {¶ 69} In addition, Dr. Osterlund, who attended Josie in the hospital, testified that the history of abuse reported by Josie comported with her physical conditions as observed during the examination. While Dr. Osterlund reported no evidence of trauma, she also testified that such was not inconsistent with sexual assault.
 {¶ 70} Although defendant denied the allegations, he testified that he had sometimes been alone with Josie. He also testified that, prior to Josie's disclosure of sexual abuse, there had been no conflict between them.
 {¶ 71} It would appear in the present case that the jury afforded little weight to defendant's testimony denying the allegations. It would also appear that the jury rejected defendant's claim that Josie's allegations resulted from being suggested to her by her mother or others to whom she disclosed the allegations. Such determinations are well within the province of the jury, and we discern no miscarriage of justice in the decision to reject defendant's claims. There is no evidence that the jury lost its way or created a manifest miscarriage of justice. Consequently, we cannot say that defendant's con-victions are against the manifest weight of the evidence. Defendant's fifth assignment of error is overruled.
 {¶ 72} Defendant's sixth assignment of error contends that the trial court erred in denying his motion for new trial based upon juror misconduct.
 {¶ 73} Under Crim.R. 33(A)(2), the misconduct of a juror may be grounds for a new trial. The decision to grant or deny a motion for new trial is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v. Schiebel (1990), 55 Ohio St.3d 71, paragraph one of the syllabus. "It is clear from the language of Crim.R. 33 that a new trial is not be to granted unless it affirmatively appears from the record that a defendant was prejudiced by one of the grounds stated in the rule, or was thereby prevented from having a fair trial. See Crim.R. 33(E)." Columbus v. Carroll (Aug. 27, 1996), Franklin App. No. 96APC01-90.
 {¶ 74} During voir dire, defense counsel posed the following question to the prospective jurors:
MR. PALMER: I'm going to ask a tough question here and I don't necessarily need a verbal response. Does anybody have any particular experience with child or sex abuse or anything else that they may want to bring to our attention because it might affect the way you see things, does anybody have any experience like that? * * * [W]hether it's you personally, a loved one, a child, anybody have anything like that that might cause some unfair prejudice?
None of the jurors responded, verbally or otherwise.
 {¶ 75} After the verdicts were rendered, defendant timely filed a motion for new trial pursuant to Crim.R. 33(A), on the ground that defendant was deprived of a fair trial due to misconduct of a juror. Specifically, defendant maintained that, during post-trial discussions, defense counsel learned that one of the jurors had not disclosed, in response to the foregoing question, that the juror had prior experience with sexually abused children. Defendant argued that, had defense counsel been aware of this information, defense counsel would have explored the juror's background in much greater detail. Defendant supplemented his motion with the affidavit of John Palmer, who testified that he was present during a conversation between one of defendant's trial attorneys and challenged the juror. According to the affidavit, the juror stated that she had training and experience dealing with abused children; that, while in college, she had been involved in an intensive case study concerning child abuse; that such experience had helped her throughout her life in evaluating and coping with various situations; and that she did not reveal the information during jury selection because she thought it would not make any difference in her decision.
 {¶ 76} The trial court granted defendant's request for a hearing on the matter, but did not permit the challenged juror to be subpoenaed to testify. After hearing the arguments of counsel, the trial court ultimately denied the motion for new trial.
 {¶ 77} In a civil case cited by both parties, the United States Supreme Court deter-mined that, when it is alleged that a juror engaged in misconduct by failing to divulge material information in response to voir dire, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." McDonough Power Equip., Inc. v. Greenwood (1984), 464 U.S. 548,556, 104 S.Ct. 845.
 {¶ 78} The state asserts that the question at issue, by its own terms, does not mandate an answer. The question specifically states that a verbal response is not necessary. Further, the question reiterates its optional character by expressly leaving it to the discretion of the prospective jurors to respond. Defendant fails to adequately explain how a juror's decision not to respond to such a question amounts to misconduct.
 {¶ 79} Further, defendant fails to demonstrate that the juror "failed to honestly answer a material question." The question refers to personal experience, or experience of a loved one. There is no clear reference to academic experiences relating to child sexual abuse, as is purportedly at issue in the challenged juror's background. Thus, it was not unreasonable for the juror to think her participation in a college case study was not relevant. Indeed, according to the affidavit testimony, the juror stated that she did not disclose her participation in the case study because she did not think it would affect her decision.
 {¶ 80} Moreover, nothing in the record establishes that the challenged juror could have been successfully challenged for cause had she revealed that one of her college case studies addressed the sexual abuse of a child. The juror specifically stated that she felt she could be fair in evaluating sexual abuse allegations. When asked whether she thought false allegations of sexual abuse were possible, she said she "definitely fe[lt] it could happen." She further indicated that she believed she could apply the correct standard in determining if the state had proven its case beyond a reasonable doubt, and render a fair and impartial verdict. In short, we find that at no time did the challenged juror either expressly indicate, or give any reasonable basis to infer, that she would not be able to serve as an impartial fact finder in this case. Thus, the trial court did not abuse its discretion in overruling defendant's motion for new trial on the basis of juror misconduct. Defendant's sixth assignment of error is overruled.
 {¶ 81} By the seventh assignment of error, defendant contends that he was deprived of a fair trial by the prosecutor's misconduct. The test for prosecutorial mis-conduct is whether the remarks made by the prosecution were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Smith (1984), 14 Ohio St.3d 13,14. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.' " State v. Loch, Franklin App. No. 02AP-1065, 2003-Ohio-4701, at ¶ 43, quoting Smith v. Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940.
 {¶ 82} Defendant first contends that the prosecutor's elicitation of testimony regarding Josie's post-rape psychological problems constituted prosecutorial misconduct. Defendant also contends, in his eighth assignment of error, that the trial court's admission of this evidence was error. Since defendant's contentions address the same subject, we will combine them for discussion.
 {¶ 83} Toward the end of Josie's direct testimony, the prosecutor asked her how she felt about herself as a result of what had happened to her. Josie replied, "[n]ot good." The prosecutor then asked her if she had "done anything" to herself because she did not "feel good" about herself. Id. Defense counsel objected, arguing that evidence regarding any post-rape problems Josie may have had was irrelevant to a determination as to whether the rapes actually occurred and, even if relevant, required expert testimony on post-traumatic stress disorder ("PTSD"). The prosecutor responded that Josie's testi-mony establishing that she suffered psychological problems after the rapes did not constitute expert testimony regarding PTSD and that defense counsel could adequately refute Josie's testimony through cross-examination. The trial court summarily overruled defense counsel's objection. Josie was thereafter permitted to testify that, subsequent to the rapes, she "[t]ried to hurt [her]self" by "cutting [her]self" and had nightmares.
 {¶ 84} Later, during Presley's direct testimony, the prosecutor asked if Josie had experienced any problems after relating her story to Presley and, if so, the nature of such problems. Defense counsel reiterated the objection made during Josie's testimony. The prosecutor responded that the evidence was relevant so that the jury would know that Josie "didn't go on living a normal, happy life" after defendant moved out of the house. The prosecutor argued that Presley was testifying as a lay witness merely to the fact that Josie suffered problems after the rapes, not as an expert witness as to why she had the problems she did. The trial court overruled defense counsel's objection, stating that Presley could testify "in layman's terms to what she observed." Thereafter, Presley testified that Josie twice attempted to kill herself and was currently residing at a "residential home, for victims, abused children." Obviously, the post-event circumstances were designed to show the effect of the alleged sexual abuse, as otherwise it would have no relevance. Furthermore, even if admissible, the causation must be linked by expert testimony which would bring in discussion of other relational factors, including the circumstances giving rise to the alleged discovery of sexual abuse by defendant.
 {¶ 85} In State v. Ponce (Oct. 10, 1996), Franklin App. No. 95APA11-1450, this court determined that the trial court abused its discretion in permitting a rape victim to testify that she had sought counseling for emotional problems and, in particular, nightmares brought on by her rape. This court reasoned that, under Evid.R. 403(A), the prejudicial impact of the victim's testimony so outweighed its probative value that the trial court should have refused to admit it:
* * * Any relevance that the counseling testimony had to the issue of defendant's guilt or innocence, and it was very limited, was substantially outweighed by the danger of unfair prejudice to defendant. Evid.R. 403(A). The testimony was an inflammatory emotional appeal to the jury, which provided no further significant proof of defendant's guilt.
 {¶ 86} The victim's testimony in Ponce is similar to that at issue in the instant case. Josie testified that she had nightmares, and both she and her mother testified that she tried to commit suicide as a result of the rapes. As in Ponce, such testimony provided no further significant proof of defendant's guilt and was substantially outweighed by the danger of unfair prejudice to defendant. Accordingly, we find that the trial court abused its discretion in admitting this testimony. However, the prosecutor appeared to be acting in good faith in her advocacy role, although both she and the trial court were in error as to the admissibility of the testimony.
 {¶ 87} This analysis applies to the fact that the hearsay statements of Fullen elicited by the prosecution regarding Josie's creation of the diagram and her accompanying statements explaining what was depicted in the diagram was allowed by the court, and the prosecution presented her view of reasons for admissibility on the often complex issue of hearsay.
 {¶ 88} The remainder of defendant's claims of prosecutorial misconduct pertain to closing argument. Defendant challenges seven statements made by the prosecutor. We note initially that defendant failed to object to three of the alleged improper statements. As to these statements, defendant has waived all but plain error. State v. Slagle (1992), 65 Ohio St.3d 597, 604. Plain error is an obvious error that affects a substantial right. It does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise. Loch, supra, at ¶ 12, citing State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 139.
 {¶ 89} Prosecutors are afforded wide latitude in closing arguments. State v. Maurer (1984), 15 Ohio St.3d 239, 269; State v. Jacks (1989), 63 Ohio App.3d 200, 210. The arguments must be reviewed in their entirety to determine whether the prosecutor's disputed remarks were prejudicial. State v. Mann (1993), 93 Ohio App.3d 301, 312. For a prosecutor's closing argument to be prejudicial, the remarks must be "so inflammatory as to render the jury's decision a product solely of passion and prejudice." State v. Williams (1986), 23 Ohio St.3d 16, 20. Even if a prosecutor's statements during closing arguments are improper, reversal based upon those statements is warranted only if the statements permeate the entire atmosphere of the trial. State v. Tumbleson (1995),105 Ohio App.3d 693, 699.
 {¶ 90} We first address the prosecutor's statements to which defense counsel failed to object. During the rebuttal portion of closing argument, the prosecutor told the jurors "[y]ou're the gatekeepers at this point and it's time you deliver justice." The latitude afforded prosecutors in closing argument does not " `encompass inviting the jury to reach its decision on matters outside the evidence at trial' or `allud[ing] to matters not supported by admissible evidence.' " State v. Freeman (2000), 138 Ohio App.3d 408, 419, quoting State v. Hart (1994),94 Ohio App.3d 665, 671. "Prosecutors should not appeal to public sentiment in closing arguments by urging the jurors to protect society, protect community values, preserve civil order, or deter future lawbreaking." Loch, supra, at ¶ 67, citing State v. Spirko (1991),59 Ohio St.3d 1, 13; State v. Hart, Cuyahoga App. No. 79564, 2002-Ohio-1084. The prosecutor's remark is distinguishable from that made in Hart, supra, in which the prosecutor invited the jury to evaluate the fairness of the judicial system as a whole instead of evaluating the guilt or innocence of the defendant. Here, the prosecutor's remark did not urge the jury to convict defendant upon any evidence outside the record or for reasons related to society as a whole without regard to the evidence presented at trial. Accordingly, this argument is without merit.
 {¶ 91} Defendant further challenges the prosecutor's reference to all victims of child abuse. In particular, the prosecutor remarked: "If all of the children that were being sexually abused screamed together we would all be deaf." Taken out of context, this remark could be viewed as inflaming juror passion and prejudice. However, when understood in the proper context, this comment served as a response to defendant's theory that Josie must not have been sexually abused because she did not immediately report the allegations. Indeed, the prosecutor referenced defendant's theory by stating that "[s]he didn't scream, so it didn't happen." This argument is without merit.
 {¶ 92} Defendant next argues that the prosecutor improperly injected his personal belief as to Josie's credibility by citing himself as one of a number of persons with whom Josie had discussed her allegations. We do not agree with defendant's characterization of the prosecutor's statement, as no personal opinion was offered. Further, "[a] prosecutor may state his opinion if it is based on the evidence presented at trial." State v. Watson (1991), 61 Ohio St.3d 1, 10, citing State v. Tyler (1990), 50 Ohio St.3d 24, 41. Josie's testimony already established that she had told her story to several different persons, including the prosecutor. This argument is without merit.
 {¶ 93} As to the prosecutor's comments to which defense counsel objected, defendant first contends that the prosecutor improperly referenced matters outside the evidence and misled the jury by referencing legislative intent in regard to the use of "on or about" language in the verdict forms. The prosecutor discussed the jury's obligation to determine whether the sexual abuse occurred during the time periods set forth in the verdict forms. In so doing, the prosecutor directed the jury's attention to the words "on or about," which preceded the dates in the verdict forms and offered the following explanation as to why that language was included: "[T]he legislature saw that there are certain people * * * like Josie * * * that are developmentally delayed * * * that aren't good with dates, they don't have to be exact, just that on or about those time periods this occurred. Some people aren't so skilled when it comes to remembering dates." Although the prosecutor's comment regarding legislative intent may have approached the border of impropriety, we have already recognized that, in cases involving sexual misconduct with a child, precise dates and times of the alleged offenses cannot always be determined with specificity. Thus, the prosecutor's explanation regarding the use of "on or about" language in this particular case was not improper.
 {¶ 94} Defendant also contends that the prosecutor engaged in misconduct by sitting in the witness chair and commenting on how difficult it would be for Josie to sit close to defendant and recount what he had done to her. Defense counsel objected and moved for a mistrial on the basis that the comment urged the jury to draw an adverse inference from defendant's right to confront his accuser in open court as she testified. The trial court overruled the objection and denied the motion for mistrial, finding that the comment merely suggested to the jury that Josie's ability to sit near defendant as she testified served as a reason to believe her story. We agree. When a prosecutor's remarks comment fairly on the credibility of witnesses and do not constitute an invitation to go beyond the evidence presented, such argument does not appeal to the passions and prejudices of the jury. State v. Price (1979),60 Ohio St.2d 136, paragraph three of the syllabus. The prosecutor's comments regarding Josie's ordeal were meaningful in terms of her credibility and, thus, appropriate.
 {¶ 95} Defendant also challenges the prosecutor's statement on rebuttal that it took gall to presume how a child victim of sexual abuse might respond. Defendant contends that this statement amounted to a personal attack on defense counsel.
 {¶ 96} In State v. Brown (1988), 38 Ohio St.3d 305, the Ohio Supreme Court rejected the defendant's claim of prosecutorial misconduct where the prosecutor remarked that defense counsel followed a "dartboard approach" to defense, that counsel spoke out of both sides of his mouth, and that counsel's theory of the case was "baloney." While recognizing that inflammatory, derogatory and abusive comments are improper, the court acknowledged that prosecutors are not prohibited from being "colorful or creative." As such, the court determined that the prosecutor's remarks were permissible.
 {¶ 97} In this case, the challenged comment is not inflammatory, derogatory or abusive. Further, the comment was made to rebut the defense theory that Josie must not have been sexually abused because she did not inform anyone of the abuse immediately after it occurred. This argument is without merit.
 {¶ 98} Defendant further maintains that the prosecutor improperly referenced inadmissible testimony regarding Josie's post-rape psychological problems in his closing argument. In arguing that the jury should believe Josie, the prosecutor stated:
* * * [Josie] had no motive to lie. What does Josie have to gain? Nothing. Has Josie led a charmed life since she told you about what was happening to her?
No. She's actually tried to kill herself. She lives in a group home for children who can't cope with the effects of being sexually abused.
We have previously determined that the prejudicial effect of the testimony regarding Josie's post-rape psychological problems substantially outweighed any probative value the testimony may have had regarding defendant's guilt or innocence. However, as previously pointed out, the prosecutor's conduct was in accordance with rulings of the court, albeit erroneous.
 {¶ 99} Accordingly, defendant's seventh assignment of error is overruled and defendant's eighth assignment of error is sustained.
 {¶ 100} Defendant's third, fourth, fifth, sixth and seventh assignments of error are overruled, and his first, second (to a limited extent), and eighth assignments of error are sustained. The judgment of the Franklin County Court of Common Pleas is reversed and this case is remanded to the trial court for a new trial.
Judgment reversed and remanded.
PETREE, P.J., and BROWN, J., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.